## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **SARAH FETES, ANTHONY BANGERT, DECLAN LAWSON, NICOLE CHURCH BRIAR NAPIER, and DOUGLAS ARP,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**LEE ENTERPRISES INCORPORATED,**<br><br>Defendant. | Case No. 3:25-cv-00067-SMR-SBJ |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY.................................................2

III.  SUMMARY OF SETTLEMENT ..........................................................................3

    A.  Settlement Class...........................................................................................3

    B.  Settlement Consideration .............................................................................4

        1.  Compensation for Ordinary or Extraordinary Losses....................................5

            a.  Compensation for Ordinary Losses ........................................................5

            b.  Compensation for Extraordinary Losses...................................................5

        2.  Alternate Cash Payment....................................................................6

        3.  Credit Monitoring ...........................................................................7

        4.  Cy Pres Recipient ..........................................................................7

        5.  Prospective Relief ..........................................................................7

        6.  Releases .....................................................................................7

    C.  Notice Plan, Claims Process, Opt-Outs, and Objections .................................8

        1.  Settlement Administrator...................................................................8

        2.  Notice Plan..................................................................................8

        3.  Claims Process ..............................................................................9

        4.  Opt-outs and Objections ..................................................................10

    D.  Service Awards; Fee Award and Costs..........................................................10

        1.  Service Awards .............................................................................10

        2.  Fee Award and Costs .......................................................................11

IV.  ARGUMENT AND MEMORANDUM OF LAW.................................................11

A.  The Court Should Certify the Proposed Settlement Class for Settlement Purposes..........12

B.  The Settlement is Fair, Reasonable, and Adequate, Warranting Preliminary Approval ...17

    1.  The Settlement Satisfies all Rule 23(e) and Eighth Circuit Requirements.................18

        a.  Plaintiffs and Class Counsel Adequately Represented the Settlement Class ........18

        b.  The Settlement Was Negotiated at Arm's Length .................................................19

        c.  The Settlement Benefits Are Substantial .............................................................20

            i.  Costs, risks, and delay of trial and appeal......................................................20

            ii.  Method of distributing relief to the Class ......................................................22

            iii.  Proposed Fee Award and Costs ...................................................................23

            iv.  No additional agreements ...........................................................................23

        d.  The Settlement Treats Settlement Class Members Equitably...............................24

        e.  The Settlement Satisfies the Factors Considered by the Eighth Circuit ...............24

            i.  Relative Merits of Plaintiffs' Claims ............................................................24

            ii.  Complexity, Expense, and Duration of Litigation ........................................25

            iii.  Defendant's Ability to Pay..........................................................................26

            iv.  Reaction to the Settlement ..........................................................................26

C.  The Proposed Settlement Administrator Will Provide Adequate Notice .........................27

D.  The Court Should Provisionally Appoint Class Counsel...................................................28

V.  PROPOSED SCHEDULE OF EVENTS.................................................................................29

VI.  CONCLUSION.......................................................................................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ...................................................................14

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................12, 16

*Bassett v. Credit Mgt. Servs., Inc.*,
   No. 8:17CV69, 2019 U.S. Dist. LEXIS 153263 (D. Neb. Aug. 6, 2019) ..................................11

*Briles v. Tiburon Fin., LLC*,
   2016 U.S. Dist. LEXIS 100249 (D. Neb. Aug. 1, 2016) ..........................................11, 13, 17, 18

*Caligiuri v. Symantec Corp.*,
   855 F.3d 860 (8th Cir. 2017) .................................................................23

*Caroline C. ex rel. Carter v. Johnson*,
   174 F.R.D. 452 (D. Neb. 1996) ...............................................................13

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ..........................................................12

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) .................................................................14

*Donaldson v. Pillsbury Co.*,
   554 F.2d 825 (8th Cir. 1977) .................................................................14

*Gomez v. Centennial Bank*,
   No. 4:23-cv-00333-LPR, 2025 U.S. Dist. LEXIS 145590 (E.D. Ark. July 30, 2025) .........16, 23

*Hapka v. CareCentrix, Inc.*,
   2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) ..........................................16

*Harris v. Republic Airlines, Inc.*,
   No. 4-88-1076, 1991 U.S. Dist. LEXIS 16461 (D. Minn. Nov. 12, 1991) ..............................23

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299–15 (N.D. Cal. 2018) ...........................................................16

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) ...................................22, 23, 25

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) .......................................................12, 16

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) ............................................................12

*In re Target Corp. Customer Data Security Breach Litig.*,
2015 U.S. Dist. LEXIS 155137 (D. Minn. Nov. 17, 2015) ......................21

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
2016 U.S. Dist. LEXIS 200113 (N.D. Ga. Aug. 23, 2016) ......................16

*In re Wawa, Inc. Data Sec. Litig.*,
2023 U.S. Dist. LEXIS 184635 (E.D. Pa. Oct. 12, 2023) ............................21, 25, 26

*In re Xcel Energy, Inc., Secs. Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)......................................................23

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ..................................................................24

*Jackson v. Nationwide Retirement Solutions, Inc.*,
2024 WL 958726 (S.D. Ohio Mar. 5, 2024) ....................................21, 26

*Liddell v. Bd. of Educ. of St. Louis*,
No. 4:72CV100 SNL, 1999 U.S. Dist. LEXIS 24131 (E.D. Mo. Mar. 12, 1999) ....................12

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*,
921 F.2d 1371 (8th Cir. 1990) ................................................................11

*Logan v. Marker Group, Inc.*,
2024 U.S. Dist. LEXIS 126653 (S.D. Tex. July 18, 2024) ..................22, 25

*Marshall v. NFL*,
787 F.3d 502 (8th Cir. 2015) ............................................................26, 27

*Morgan v. United Parcel Serv. of Am., Inc.*,
169 F.R.D. 349 (E.D. Mo. 1996) ............................................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ................................................................................27

*Paxton v. Union Nat'l Bank*,
688 F.2d 552 (8th Cir. 1982) ......................................................13, 14, 15

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ..........................................................11, 24

*Pollard v. Remington Arms Co.*,
320 F.R.D. 198 (W.D. Mo. 2017) ...........................................................20

*Schoenbaum v. E.I. Dupont De Nemours & Co.,*
　No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009) ..........13, 18

*Sciaroni v. Target Corp.,*
　892 F.3d 968 (8th Cir. 2018) ...................................................................................16, 20, 24

*Smith v. Specialty Networks LLC,*
　2025 U.S. Dist. LEXIS 134484 (E.D. Tenn. July 15, 2025) ......................................................12

*Tate v. Eyemed Vision Care, LLC,*
　2025 U.S. Dist. LEXIS 145042 (S.D. Ohio July 29, 2025) ......................................................12

*Vassalle v. Midland Funding LLC,*
　708 F.3d 747 (6th Cir. 2013) .................................................................................................27

*Waldschmidt v. Union Pac. R.R. Co.,*
　No. 4:21CV3124, 2025 U.S. Dist. LEXIS 190028 (D. Neb. Sep. 24, 2025) ......................16, 17

*Walkinshaw v. Commonspirit Health, No. 4:19CV3012,*
　2022 U.S. Dist. LEXIS 186647 (D. Neb. Oct. 6, 2022) ..........................................................18

*Walmart Stores, Inc. v. Dukes,*
　564 U.S. 338 (2011) .............................................................................................................13

*West v. PSS World Med., Inc.,*
　No. 4:13- cv-574, 2014 U.S. Dist. LEXIS 57150 (E.D. Mo. Apr. 24, 2014) ............................23

*White v. Nat'l Football League,*
　822 F. Supp. 1389 (D. Minn. 1993) ......................................................................................13

*White v. Nat'l Football League,*
　836 F. Supp. 1458 (D. Minn. 1993) ......................................................................................20

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................................ *Passim*

**Other**

Manual for Complex Litigation § 21.632 ..................................................................................17

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22.27 (3d ed. 1992) ..............................11

Plaintiffs,[1] individually, and on behalf of others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), & (e), respectfully move for an order (1) conditionally certifying the proposed Settlement Class for the purpose of Settlement; (2) preliminarily approving the Settlement; (3) appointing Gary M. Klinger of Milberg, PLLC, Jeff Ostrow of Kopelowitz Ostrow P.A., and Leanna A. Loginov of Shamis & Gentile, P.A. as Class Counsel for Settlement purposes; (4) conditionally appointing Plaintiffs as Class Representatives; (5) approving the forms and substance of the Notices, Notice Plan, Claim Form, and Claim process; (6) approving the procedures for Settlement Class Members to opt-out of or object to the Settlement; (7) appointing Simpluris as the Settlement Administrator and ordering it to implement the Notice Plan; (8) staying the Action pending Final Approval of the Settlement; and (9) scheduling a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's counsel.

## I.    INTRODUCTION

On about June 3, 2025, Defendant notified approximately 39,770 individuals—the proposed Settlement Class—about a Data Security Incident affecting their Private Information, which may include full names, Social Security numbers, and medical information. SA at 1. As a result, this Action was initiated in connection with Defendant's alleged failure to safeguard Settlement Class Members' Private Information. *Id*. Defendant denies all liability and wrongdoing. *Id*. at 2.

After extensive arm's-length negotiations, the Parties reached a Settlement that is fair, reasonable, and adequate, providing meaningful relief to the Settlement Class. Declaration of Class

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section 1 of the Settlement Agreement, attached as to the Motion as ***Exhibit 1*** ("Settlement Agreement" or "SA").

Counsel, attached as **Exhibit 2** to the Motion ("Counsel Decl."), ¶¶ 5, 12–13. The Settlement's $600,000.00 non-reversionary common Settlement Fund will be used to pay (1) all Settlement Payments and credit monitoring Settlement Benefits; (2) all Administration Expenses; (3) any Court-awarded Service Awards to Class Representatives; (4) any Court-approved Fee Award and Costs to Class Counsel; and (5) taxes. SA ¶ 3.1. All Settlement Class Members may submit Claims for three types of cash payments and credit monitoring. *Id.* ¶¶ 3.3–3.5. Further, the Settlement secures meaningful prospective relief through Defendant's commitment to implement data security cyber security enhancements and improvements in data privacy policies, processes, and procedures. *Id.* ¶¶ 2.1–2.2. This prospective relief will be paid by Defendant separately and in addition to the Settlement Fund, and is an additional, meaningful Settlement Benefit available to all Settlement Class Members, regardless of whether they submit a Claim. *Id.* Plaintiffs strongly believe the Settlement is favorable to the Settlement Class and warrants Preliminary Approval. Counsel Decl. ¶ 16.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Defendant is a media company that provides local news, information, and advertising in 72 markets and 25 states. *Id.* ¶ 1. In February 2025, Defendant detected the Data Security Incident that potentially impacted approximately 39,779 Settlement Class Members' Private Information. SA at 1. On or about June 12, 2025, Defendant began sending notice letters about the Data Security Incident to individuals whose Private Information was potentially affected. *Id.*

As a result of the Data Security Incident, four proposed class actions against Defendant were filed in the United States District Court for the Southern District of Iowa by Plaintiffs Sarah Fetes, Anthony Bangert, Declan Lawson and Nicole Church. *Id.* ¶ 2. Plaintiffs moved to consolidate the related actions and on July 11, 2025, the related actions were consolidated into the

instant Action, the first-filed *Fetes v. Lee Enterprises, Inc*. *Id.* A fifth class action was filed on June 23, 2025 by Plaintiff Briar Napier in Iowa state court and removed to this court on July 15, 2025. Plaintiff Napier filed a notice of voluntary dismissal without prejudice on July 21, 2025.  A sixth class action was filed in this court on July 15, 2025, by Douglas Arp. *Id.* On July 30, 2025, Plaintiff Arp filed a notice of voluntary dismissal without prejudice.  *Id.* On August 11, 2025, Plaintiffs Sarah Fetes, Anthony Bangert, Declan Lawson, Nicole Church, Douglas Arp, and Briar Napier filed the operative consolidated Complaint asserting claims against Defendant for negligence, negligence *per se*, unjust enrichment, invasion of privacy, breach of fiduciary duty, breach of implied contract, and declaratory relief. *Id.*

Thereafter, considering the risk, expense, and delay of continued litigation, the Parties began discussing resolution of the Action. *Id.* ¶ 3. To aid in settlement negotiations, the Parties exchanged informal discovery related to the nature of the Data Security Incident, the size and scope of the putative class, the data elements at issue, and Defendant's responsive and remedial measures. *Id.* ¶ 4. The materials exchanged in connection with settlement negotiations allowed Plaintiffs to thoroughly evaluate the strengths and weaknesses of the claims and defenses in the Action and the potential for resolution. *Id.* The Parties then engaged in arms-length negotiations through experienced counsel, which ultimately resulted in their agreement to resolve the Action through the proposed Settlement. *Id.* ¶ 5. Thereafter, the Parties worked cooperatively to negotiate and finalize Settlement terms and the Agreement, Notices, and Claim Form accompanying this Motion. *Id.* ¶  6.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class

The Settlement Class is defined as follows:

All persons identified as being among those individuals impacted by the Data Security Incident, including all who were sent a notice of the Security Incident.

SA ¶ 1.46. Excluded from the Settlement Class are (1) the Judge(s) presiding over the Action and members of their immediate families and their staff; (2) Defendant and its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, has a controlling interest; (3) natural persons who properly execute and submit a request to opt out prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person. *Id.*

**B.    Settlement Consideration**

The Settlement's non-reversionary $600,000.00 Settlement Fund will be the total sum required to be paid by Defendant (exclusive of the data security enhancements which are to be paid by Defendant separate and apart from the Settlement Fund) to settle this Action and will be used to pay (1) all Settlement Benefits of Settlement Payments and credit monitoring services; (2) all Administration Costs; (3) any Court-awarded Service Awards to Class Representatives; (4) any Court-approved Fee Award and Costs to Class Counsel; and (5) taxes. *Id.* ¶ 3.1.

All Settlement Class Members are eligible to submit Claims for (1) Settlement Payments of either (a) Compensation for Ordinary Losses up to $1,000.00 per Claimant, (b) Compensation for Extraordinary Losses up to $3,000.00, or (c) an Alternate Cash payment (estimated at approximately $35.00 per Claimant; and (2) credit monitoring services. *Id.* ¶¶ 3.3–3.5. Additionally, the Settlement secures meaningful prospective relief through Defendant's commitment to implement data security cyber security enhancements and improvements, paid by Defendant separately and in addition to the Settlement Fund, which is another meaningful Settlement Benefit available to all Settlement Class Members regardless of whether they submit a Claim. *Id.* ¶ 2.1–2.2.

1.    ***Compensation for Ordinary or Extraordinary Losses***: All Settlement Class Members may submit a Claim for Settlement Payments of either (a) Compensation for Ordinary Losses or (b) Compensation for Extraordinary Losses. SA ¶ 3.3.

  a.  <u>Compensation for Ordinary Losses</u>: All Settlement Class Members may submit a Claim for Compensation for Ordinary Losses that are fairly attributable to the Data Security Incident, up to $1,000.00 per individual, that occurred between June 1, 2025, and the close of the Claims Deadline. *Id.* Such Ordinary Losses include (i) out-of-pocket expenses incurred as a result of the Data Security Incident, i.e. bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel; (ii) fees for credit reports, credit monitoring, or other identity theft insurance product purchased between the date of the Data Security Incident and the close of the Claims Period; and (iii) up to 4 hours at $20/hour for attested lost time spent dealing with the Data Security Incident. *Id.* All Claims for Compensation for Ordinary Losses must be accompanied by appropriate documentation, as determined by the Settlement Administrator, to be valid. *Id.*

  b.  <u>Compensation for Extraordinary Losses</u>: In the alternative to Compensation for Ordinary Losses, all Settlement Class Members may submit a Claim for Compensation for Extraordinary Losses, up to $3,000.00 per individual. *Id.* To qualify for Compensation for Extraordinary Losses, the claimed loss must be an actual, documented, and unreimbursed monetary loss that occurred and was more likely than not caused by the Data Security Incident, which the Settlement Class Member made reasonable efforts to avoid or have reimbursed by another source. *Id.* All Claims for Compensation for Extraordinary Losses must be accompanied by appropriate documentation, as determined by the Settlement

Administrator, to be valid. *Id.* Extraordinary Loss is an expense or fee associated with identity theft, medical fraud, tax fraud, other forms of fraud, and other actual misuse of Private Information provided that (i) the loss is an actual documented and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Security Incident; (iii) the loss was not already covered by one or more of the time and expense compensation categories under Ordinary Losses provided for in the Agreement; (iv) the Settlement Class Member made reasonable efforts to avoid the loss or seek reimbursement for the loss, and (v) the loss occurred between June 1, 2025 and the close of the Claims Deadline and are supported by Reasonable Documentation. *Id.* ¶ 1.2.

2.    ***Alternate Cash Payment***: In lieu of making a claim for an Ordinary or Extraordinary Loss payment, Settlement Class Members may submit a Claim for a pro-rated Alternate Cash Payment to compensate them for their alleged harms. *Id.* ¶ 3.4. The Alternate Cash Payment is estimated to be $35.00 per Claimant, but will be increased or decreased on a *pro rata* basis to exhaust the Settlement Fund. *Id.* For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Settlement Fund first in the following order (i) all Administrative Expenses, (ii) Court-approved Fee Award and Costs and Service Awards, (iii) costs of claimed credit monitoring services, (iv) Approved Claims for Compensation for Ordinary Losses; and (v) Approved Claims for Compensation for Extraordinary Losses. *Id.* The amount of each Alternate Cash Payment shall be the remaining amount of the Net Settlement Fund divided by the number of Approved Claims submitted for Alternate Cash Payments. *Id.* Any claims for Compensation for Extraordinary or Ordinary Losses that were rejected will also be eligible for the Alternate Cash Payment under this formula, as opposed to being rejected outright. *Id.*

3.    ***Credit Monitoring***: In addition to electing Compensation for Ordinary or Extraordinary Losses or an Alternate Cash Payment, Settlement Class Members may submit Claims to receive one year of three-bureau credit monitoring services with at least $1,000,000 in fraud protection through CyEx LLC. *Id.* ¶ 3.5.

4.    **Cy Pres *Recipient***: The Settlement is intended to exhaust the Settlement Fund. *Id.* ¶ 3.12. However, to the extent any monies remain in the Net Settlement Fund more than 120 days after the distribution of all payments to Settlement Class Members, the remaining amount, if any, shall be distributed to a *cy pres* consisting of one or more nonprofit organizations agreed to by the Parties and subject to the approval of the Court. *Id.*

5.    ***Prospective Relief:*** In addition to the Settlement Benefits of Settlement Payments and credit monitoring, Defendant has agreed to implement and maintain enhanced confidential cyber security, data, and privacy measures. *Id.* ¶¶ 2.1–2.2. Such enhancements include expansion of third-party security monitoring, improvements in identity and access management, improvements in password management systems, enhancements to network segmentation and firewalls, and improvements in policies, processes and procedures. *Id.* The cost of this prospective will be paid by Defendant separately and in addition to the Settlement Fund, and provides meaningful, forward-looking benefits to all Settlement Class Members, regardless of whether they submit a Claim. *Id.*

6.    ***Releases***: Following the Release Effective Date, each Class Representative and all Settlement Class Members who have not submitted a timely and valid request to opt-out of the Settlement, on behalf of themselves, their heirs, assigns, executors, administrators, agents, partners, attorneys, predecessors, and successors, and any other person purporting to claim on their behalf, shall be deemed to have released, acquitted, and forever discharged Defendant and the

Released Parties from any and all Released Claims including, as to Class Representatives only, any Unknown Claims. *Id.* ¶ 4.

### C.    Notice Plan, Claims Process, Opt-Outs, and Objections

**1.    *Settlement Administrator*:** The Parties agree that subject to Court approval, Simpluris shall be the Settlement Administrator. *Id.* ¶ 1.45. The Settlement Administrator will be responsible for administering all aspects of the Settlement, including disseminating Notice, processing Claims, and distributing Settlement Benefits. *Id.* ¶ 7.2. The Parties shall jointly oversee the Settlement Administrator. *Id*. All Administration Costs, including, without limitation, the fees and expenses of the Settlement Administrator, shall be paid, or caused to be paid, from the Settlement Fund. *Id.* ¶ 3.1.

**2.    *Notice Plan*:** Defendant will deliver the Class List to the Settlement Administrator no later than 10 days after entry of the Preliminary Approval Order. *Id.* ¶ 6.4. Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator will commence the Notice Plan pursuant to the Agreement, using the forms of Notice approved by the Court. *Id.* ¶¶ 1.29, 6.3.

Direct Notice will be sent to Settlement Class Members via double-sided Postcard Notice that include a tear-off Claim Form. *Id.* ¶ 6.3. Postcard Notice will be sent to the Class List provided by Defendant, and the Settlement Administrator will use the National Change of Address Registry to update addresses on Class List prior to the initial mailing of Notice, as needed. *Id.* ¶ 6.4. If a Postcard Notice is returned as undeliverable, the Settlement Administrator will search for an updated address and resend the notice to the updated address. *Id.* ¶ 6.3. Re-mailed Postcard Notices and Reminder Notices will not extend any applicable deadlines (e.g., the Objection Deadline, Opt-Out Period, or Claims Deadline). *Id.* Any Reminder Notice will be paid for out of the Settlement

Fund. *Id.* ¶ 1.37. The Postcard Notice shall include, among other information, the following: a description of the material terms of the Settlement; how to submit a Claim Form; the Claims Deadline; the Opt-Out Period and Objection Deadline; the Final Approval Hearing date; the Settlement Website address at which Settlement Class Members may access the Agreement and other related documents and information including the Long Form Notice, and the toll-free telephone line. *Id.* at Ex. B.

In addition, the Settlement Administrator will establish the Settlement Website following entry of the Preliminary Approval, but prior to the Notice Program's initiation. *Id.* ¶ 6.7. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including but not limited to the Long Form Notice, the Claim Form, the Agreement, the Preliminary Approval Order entered by the Court, the Final Approval Order and Judgment, and the operative Consolidated Class Action Complaint in the Action, and will (on its URL landing page) notify the Settlement Class of the date, time, and place of the Final Approval Hearing. *Id.* The Settlement Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly. *Id.* The Settlement Website shall also allow for submission of opt-out requests electronically through the Settlement Website. *Id.*

**3.**    ***Claims Process***: The Claims process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms; compile documents supporting their Claim for Compensation of Ordinary or Extraordinary Losses, if elected; submit Claims; and decide whether to opt-out or object to the Settlement. Counsel Decl. ¶ 23. Claim Forms (mail or online) are due to the Settlement Administrator by the Claims Deadline (90 days following the

Notice Date). SA ¶ 1.9. The Claim Form is in plain language for easy completion. Counsel Decl. ¶ 23. The Settlement Administrator will process Claim Forms in a rational, responsive, cost effective, and timely manner and review the Claim Forms for completeness and validity, with the right to reasonably request additional information from the Parties or any Claimant if needed to verify a Claim. SA ¶ 7.2.

   **4.**   ***Opt-outs and Objections***: The Opt-Out Period begins on the Notice Date and ends 60 days thereafter. *Id.* ¶ 1.31. The Objection Deadline is likewise 60 days following the Notice Date. *Id.* ¶ 1.30. These dates are specifically calculated to provide sufficient time to access and review the Settlement documents, including the motion for Attorneys' Fees, Costs, and Service Awards, to be filed no later than 14 days before the Opt-Out Deadline and close of the Objection-Period and posted on the Settlement Website. *Id*. ¶ 8.1; Counsel Decl. ¶ 24. Settlement Class Members who opt-out may not object. SA ¶ 6.8.

   **D.**   **Service Awards; Fee Award and Costs**

   1.   ***Service Awards***: The Settlement Agreement provides that Class Counsel and Class Representatives may seek reasonable Service Awards for the Class Representatives of up to $1,000.00 each. *Id.* ¶ 8.1. The Service Awards are meant to compensate the Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's questions. Counsel Decl. ¶¶ 9–10. Defendant will not oppose Plaintiffs' request for Service Awards to the extent it does not exceed this amount. *Id.* ¶ 9. The Settlement Administrator shall pay the Service Awards approved by the Court to the Class Representatives from the Settlement Fund. *Id.* The motion requesting Service Awards shall be filed no later than 14 days before the close of the Objection-Period and posted on

the Settlement Website. SA ¶ 8.1. The Parties did not discuss Service Awards to Class Representatives until after the substantive terms of the Settlement had been agreed upon. SA ¶ 8.4; Counsel Decl. ¶ 7.

       2.    ***Fee Award and Costs*:** Plaintiffs will move the Court for a reasonable Fee Award and Costs to Class Counsel up to a total of one-third of the Settlement Fund ($200,000.00), and reimbursement of reasonable litigation expenses. SA ¶ 9.1. The Parties did not discuss the payment of attorneys' fees, costs, and/or expenses until after the substantive terms of the Settlement had been agreed upon, and the Settlement is not contingent on approval of the Application for Attorneys' Fees, Costs, and Service Awards; if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 9; Counsel Decl. ¶ 7. The Notices advise the Settlement Class of these intended requests and further information on how to object. SA ¶¶ 6.8, 6.9.

## IV.    ARGUMENT AND MEMORANDUM OF LAW

       The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992). At this juncture, courts typically first certify the class for settlement purposes, then consider the proposed settlement's fairness. *Briles v. Tiburon Fin., LLC*, 2016 U.S. Dist. LEXIS 100249, at *12 (D. Neb. Aug. 1, 2016).

       Given the "strong public policy" favoring settlement agreements, courts "should approach them with a presumption in their favor" in the approval determination. *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999); *Bassett v. Credit Mgt. Servs., Inc*., No. 8:17CV69, 2019 U.S. Dist. LEXIS 153263, at *5 (D. Neb. Aug. 6, 2019) (citing *id.*); *see also Little Rock Sch. Dist.*

*v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting policy in favor of settlement); *Liddell v. Bd. of Educ. of St. Louis,* No. 4:72CV100 SNL, 1999 U.S. Dist. LEXIS 24131, at *13 (E.D. Mo. Mar. 12, 1999) (same); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

The proposed Settlement here is fair, reasonable, and adequate, providing meaningful and immediate relief to the Settlement Class. Accordingly, the Court should provisionally certify the Settlement Class and grant Preliminary Approval of the Settlement.

### A.    The Court Should Certify the Proposed Settlement Class for Settlement Purposes.

Under Rule 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally, under Rule 23(b)(3), a class action may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage in disputed matters, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also, e.g.*, *Tate v. Eyemed Vision Care, LLC*, 2025 U.S. Dist. LEXIS 145042, at *23 (S.D. Ohio July 29, 2025); *Smith v. Specialty Networks LLC*, 2025 U.S. Dist. LEXIS 134484, at *27 (E.D. Tenn. July 15, 2025); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

***Numerosity:*** Numerosity requires that "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While there is no specific threshold number that satisfies this requirement, forty class members is generally sufficient." *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 114080, at *22 (E.D. Mo. Dec. 8, 2009); *see also Briles*, 2016 U.S. Dist. LEXIS 100249, at *6 (difficulty inherent in joining "as few as 40 class members should raise a presumption that joinder is impracticable"). Here, the proposed Settlement Class consists of approximately 39,779 individuals, which easily satisfies this requirement. *See, e.g. Caroline C. ex rel. Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996) (class of 1,037 satisfies numerosity); *Morgan v. United Parcel Serv. of Am., Inc.*, 169. F.R.D. 349, 355 (E.D. Mo. 1996) (numerosity met in 19-member class). Judicial economy would be well-served by certification.

***Commonality.*** Commonality requires Plaintiffs to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high, as commonality does not require every question be common to every member of the class, but rather that questions linking class members are substantially related to the resolution of the litigation even where the individuals are not identically situated. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1403 (D. Minn. Apr. 30, 1993) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)) (citations and quotations omitted)). In fact, "for purposes of Rule 23(a)(2), even a single common question will do." *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Here, there are multiple common questions of both law and fact. Plaintiffs' and Settlement Class Members' claims derive from the same Data Security Incident and charge the same wrongdoing—Defendant's alleged failure to implement reasonable cybersecurity safeguards to adequately protect Private Information. Moreover, Plaintiffs' claims present the same legal

questions, including whether Defendant owed Plaintiffs and the Settlement Class a duty of care to implement reasonable cybersecurity measures, and whether Defendant breached that duty. These common questions, and others alleged in the Consolidated Complaint, are central to the causes of action, generate common answers, and can be addressed classwide. Accordingly, the commonality requirement is satisfied.

*Typicality.* Plaintiffs' claims must also be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality assesses whether "there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). In other words, "[t]he burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). A plaintiff can meet the typicality requirement by showing the claims of the representatives and members of the class both stem from a single event. *Paxton*, 688 F.2d at 561.

Plaintiffs satisfy the typicality requirement here because their claims arise out of the same Data Security Incident and the cybersecurity protocols Defendant had (or did not have) in place to protect their Private Information, as is the case for all putative Settlement Class Members, and present the same legal theories as would be presented if each Settlement Class Member filed his or her own individual case. Because Plaintiffs' claims arise from and address the same Data Security Incident, the typicality requirement is satisfied. *Id.*

*Adequacy of Representation.* Plaintiffs as Class Representatives must be able to provide fair and adequate representation of the Settlement Class's interests. Fed. R. Civ. P. 23(a)(4). The Eighth Circuit has articulated two criteria for determining adequacy under Rule 23(a)(4): (1) "the class representatives have common interests with the members of the class," and  (2) "the class

representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63. Both criteria are satisfied here.

First, Plaintiffs have common interests with the putative Settlement Class Members in that they were all impacted by the same Data Security Incident and their claims present common questions of law and fact. Moreover, Plaintiffs have diligently and successfully prosecuted this Action on behalf of the Settlement Class, showing their interests and those of the other Settlement Class Members are aligned. Counsel Decl. ¶ 10; *Paxton*, 688 F.2d at 563 (adequacy satisfied where representatives "share the class' interest" in obtaining relief against defendant and there "is no indication that their interest . . . will be at the expense of other class members or will, in any other way, be antagonistic to the class' interests"). Additionally, Class Representatives have demonstrated their adequacy through "a willingness to prosecute the interests of the class through qualified counsel." *Paxton* v, 688 F.2d at 563. Thus, Plaintiffs have and will continue to adequately represent the Settlement Class, should the Court appoint them as Class Representatives.

Relatedly, Class Counsel are knowledgeable and well-qualified, having successfully prosecuted many class actions, including data breach class actions like this case. Counsel Decl. ¶ 17. Class Counsel put that experience to use in negotiating the early-stage Settlement guaranteeing immediate relief to the Settlement Class. *Id.* Accordingly, Class Counsel has adequately represented the Settlement Class here.

***Predominance and Superiority.*** The Court may certify a Rule 23(b)(3) class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are easily satisfied here.

The predominance inquiry requires the Court to assess "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. Here, there are multiple predominating common questions of law and fact. Plaintiffs' and Settlement Class Members' claims all arise from the same Data Security Incident and Defendant's same alleged failures to implement reasonable cybersecurity practices. *See Waldschmidt v. Union Pac. R.R. Co., No.* 4:21CV3124, 2025 U.S. Dist. LEXIS 190028, at *21 (D. Neb. Sep. 24, 2025) (common issues predominate where "[a]ll class members were affected by a uniform policy enforced on a company-wide basis"). Plaintiffs' and Settlement Class Members' claims also present common questions of law: whether Defendant owed Plaintiffs and the Settlement Class a duty to safeguard their sensitive Private Information; whether Defendant breached that duty; whether Defendant's conduct or failure to act was the proximate cause of the Data Security Incident; and whether Plaintiffs and Settlement Class Members are entitled to recovery.

The common questions predominate over any individualized issues, like in other data breach cases. *See, e.g.*, *Gomez v. Centennial Bank*, No. 4:23-cv-00333-LPR, 2025 U.S. Dist. LEXIS 145590, at *6 (E.D. Ark. July 30, 2025) (finding "common questions that arise from Centennial Bank's conduct [in failing to safeguard customers' personal data] predominate over any individualized issues"); *Heartland*, 851 F. Supp. 2d at 1059 (concluding predominance satisfied in data breach case as state law variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No2018 U.S. Dist. LEXIS 68185, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 U.S. Dist. LEXIS 200113, at *2 (N.D. Ga. Aug. 23, 2016) (same); *cf.*

16

*Sciaroni v. Target Corp.*, 892 F.3d 968, 976 (8th Cir. 2018) (affirming 23(b)(3) class certification where "all class members suffered the same injury, i.e., compromise of their personal and financial information from the data breach").

Rule 23(b)(3)'s superiority requirement is likewise satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Fed. R. Civ. P. 23(b)(3). Where, as here, "there are overarching issues which govern each putative class member's claim, a single, centralized proceeding is vastly superior to [multiple] trials with virtually the same facts." *Waldschmidt*, 2025 U.S. Dist. LEXIS 190028, at *21.

Here, individual adjudication of all Settlement Class Members' claims would be virtually impossible. Indeed, it would likely mean the individual filing of over 39,000 cases, which would drain judicial and advocate resources. Thus, "[j]udicial economy and the interests of the putative class members weigh strongly in favor of proceeding as a class action," satisfying superiority. *Id.*

Accordingly, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified for settlement purposes.

## B. The Settlement is Fair, Reasonable, and Adequate, Warranting Preliminary Approval.

Rule 23(e) provides that a class action may not be settled without the approval of the court upon finding the proposed settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Approval of a class action settlement under Rule 23(e) is "a two-step process": "First, the Court must determine whether the proposed settlement terms fall within the range of reasonableness such that preliminary approval is warranted." *Briles*, 2016 U.S. Dist. LEXIS 100249, at *1. Then, "after notice is given to the class, the Court must evaluate whether final approval is warranted." *Id.* Preliminary approval concerns only an "initial evaluation" of the

fairness of the proposed settlement to determine whether notice should issue to the class. *Manual for Complex Litigation* § 21.632; *Walkinshaw v. Commonspirit Health*, No. 4:19CV3012, 2022 U.S. Dist. LEXIS 186647, at *7 (D. Neb. Oct. 6, 2022). Thus, at this stage Rule 23(e)'s "'fair, reasonable, and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *13.

Rule 23(e) sets forth the factors courts must consider in determining the fairness of a proposed class action settlement: whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Courts in the Eighth Circuit also consider "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Briles*, 2016 U.S. Dist. LEXIS 100249, at *18. "[P]rocedural fairness to ensure that the settlement is not the product of fraud or collusion" is also relevant to the preliminary approval inquiry. *Walkinshaw*, 2022 U.S. Dist. LEXIS 186647, at *9 (citation modified). However, "[t]hese important considerations notwithstanding, a proposed settlement is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise." *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *14.

The proposed Settlement satisfies all criteria to warrant Preliminary Approval here.

**1. The Settlement Satisfies all Rule 23(e) and Eighth Circuit Requirements**

**a. Plaintiffs and Class Counsel Adequately Represented the Settlement Class**

Pursuant to Rule 23(e)(2)(A), the Court considers whether the class representatives and

class counsel adequately represented the class. Here, Plaintiffs, as the putative Class Representatives, have represented the Settlement Class admirably. They made themselves available to Class Counsel when necessary, reviewed filings, provided Class Counsel with documents and other evidence, and helped prosecute this Action diligently. Counsel Decl. ¶ 10.

Proposed Class Counsel who litigated this case and negotiated the proposed Settlement for the Settlement Class are experienced and respected class action litigators with significant experience in data breach cases. *See id.* ¶¶ 17, 28, & Exs. A–C (firm resumes). To assist in settlement negotiations the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement Class, the Data Security Incident, and Defendant's remedial measures, among other topics. *Id.* ¶ 4. Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Settlement Class Members, analyzed the documents and information produced by Defendant through informal discovery, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this Action, as well as the applicable laws of Iowa and other relevant jurisdictions. *Id.* Following the Parties' agreement to the Settlement terms, after hard-fought, arm's-length negotiations, Class Counsel worked diligently to draft and finalize the proposed Settlement and its exhibits, revise those drafts, and negotiate the details of the final proposed Settlement with Defendant's counsel. *Id.* ¶¶ 5–6. This factor therefore weighs in favor of Preliminary Approval.

### b.  The Settlement Was Negotiated at Arm's Length

The proposed Settlement is the product of hard-fought, arm's-length negotiations informed by informal discovery and with experienced attorneys on both sides. *Id.* Proposed Class Counsel conducted an extensive investigation into the case's merits prior to filing their complaints in the

related actions and the Consolidated Complaint in this Action, and were well positioned throughout settlement negotiations to have a full understanding of the value of Plaintiffs' and Class Members' claims. *Id.* ¶ 4. This factor therefore weighs in favor of Preliminary Approval. *See Sciaroni*, 892 F.3d at 979 (finding settlement negotiated at arms' length given no "clear evidence of collusion"); *White v. Nat'l Football League*, 836 F. Supp. 1458 (D. Minn. 1993) (where no evidence of collusion, concluding settlement resulted from arm's-length negotiations); *Pollard v. Remington Arms Co.,* 320 F.R.D. 198, 220 (W.D. Mo. 2017) (settlement resulted from good-faith negotiations where it followed extensive investigation by class counsel).

### c.  The Settlement Benefits Are Substantial.

The proposed Settlement is a fair and reasonable result that delivers tangible and immediate relief to all Settlement Class Members. In determining whether the benefits provided by a proposed class action settlement are adequate, Rule 23(e)(2) directs the Court to consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations weighs in favor of Preliminary Approval here.

### i.  *Costs, risks, and delay of trial and appeal*

The Settlement guarantees Settlement Class Members real relief for their injuries and protections from potential future fall-out from the Data Security Incident. First, all Settlement Class Members may elect credit monitoring (including identity theft insurance) to monitor and protect their credit and identity going forward. SA ¶ 3.5. Second, all Settlement Class Members may also submit Claims for (1) up to $1,000 for Compensation of Ordinary Losses, (2) up to

$3,000 for Compensation of Extraordinary Losses, or (3) Alternate Cash Payments. *Id.* ¶¶ 3.3, 3.4. Additionally, the Settlement provides meaningful, non-monetary prospective relief through Defendant's commitment to data security enhancements. *Id.* ¶¶ 2.1, 2.2. Comparing the proposed Settlement with recoveries obtained for classes of consumer plaintiffs in other data breach settlements demonstrates this Settlement's strength.[2] *See* Counsel Decl. ¶ 18.

While Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Data breach litigation is particularly complex because the law "has not yet been fully developed" and the parties would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa, Inc. Data Sec. Litig.*, 2023 U.S. Dist. LEXIS 184635, at *28 (E.D. Pa. Oct. 12, 2023); *see also Jackson v. Nationwide Retirement Solutions, Inc.*, 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) ("[T]he technical issues involved in data breach cases are complex."); *In re Target Corp. Customer Data Security Breach Litig.*, 2015 U.S. Dist. LEXIS 155137, at *2 (D. Minn. Nov. 17, 2015) (because "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues"). Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See,*

---

[2] *See, e.g.*, *Rutledge v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (reimbursement of out-of-pocket expenses and lost time up to $180, credit monitoring, and data security enhancements); *Chacon v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb.) (reimbursement of ordinary expenses up to $300, extraordinary expenses up to $3,000, credit monitoring, and data security enhancements); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981-CJC (DFMx) (C.D. Cal.) (reimbursement of documented losses up to $6,000, choice of credit monitoring or $100 flat cash payment); *Bahnmaier v. Wichita State Univ.*, No. 2:20-cv-02246-JAR-TJJ, (D. Kan.) (reimbursement of lost time up to $60, and out-of-pocket losses up to $300); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y.) (reimbursing up to $75 out-of-pocket expenses and $20 for lost time, capped at $75,000 in the aggregate, credit monitoring, and data security enhancements).

*e.g.*, *Logan v. Marker Group, Inc.*, 2024 U.S. Dist. LEXIS 126653 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification for trial is another hurdle. *See, e.g.*, *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including expert witness fees. Counsel Decl. ¶ 12. The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits and costs that doing so would require. Plaintiffs dispute Defendant's defenses, but success at class certification and trial is far from certain. Through the Settlement, Plaintiffs and the Settlement Class gain significant Settlement Benefits without risking not receiving any relief at all if the Action continues. *Id.* ¶ 19. Because the Settlement benefits outweigh the risks and uncertainties of continued litigation—including the attendant time and expenses associated with contested class-certification proceedings, completing merits discovery, pretrial motion practice, trial, and appeal—this factor weighs in favor of Preliminary Approval.

### ii.   *Method of distributing relief to the Class*

The Settlement's proposed method of distributing Settlement Benefits is not unduly burdensome and deters fraudulent claims. The Class List will be provided by Defendant and validated by the Settlement Administrator. SA ¶ 6.4.  The Settlement provides for effective, direct Notice to the Settlement Class and a straightforward Claim process for Settlement Class Members to submit Claims. Counsel Decl. ¶ 22–23. The Claim Process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms; compile documents supporting their Claims; submit Claims; and decide whether to opt-out or object. *Id.* ¶ 23. Accordingly, this factor weighs in favor of Preliminary Approval.

### iii.  *Proposed Fee Award and Costs*

Class Counsel has devoted significant time and financial resources to this Action despite the uncertainties of prevailing on the merits, obtaining class certification, and succeeding at trial (along with any appeals). Class Counsel did not broach the topic of attorneys' fees and costs until after agreeing on all substantive Settlement terms with Defendant's counsel. Counsel Decl. ¶ 7. Class Counsel intends to seek an attorneys' fee award of one-third the Settlement Fund, equal to $200,000.00, plus reimbursement of reasonable litigation costs, all subject to Court approval. Counsel Decl. ¶ 8.

As the forthcoming motion for Fee Award, Costs, and Service Awards will further detail, courts in the Eighth Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable, which typically range from 25% to 36% of the value made available to the class. *See, e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017); *see also Gomez*, 2025 U.S. Dist. LEXIS 145590, at *8 (awarding attorneys' fees equal to 33% of common fund); *In re Xcel Energy, Inc., Secs. Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases); *West v. PSS World Med., Inc.,* No. 4:13-cv-574, 2014 U.S. Dist. LEXIS 57150 (E.D. Mo. Apr. 24, 2014) (approving attorneys' fees of 33%); *Harris v. Republic Airlines, Inc.,* No. 4-88-1076, 1991 U.S. Dist. LEXIS 16461 (D. Minn. Nov. 12, 1991) (awarding a sum slightly in excess of 30% of common benefit).

Plaintiffs will file the motion requesting Class Counsel's Fee Award and Costs prior to the Objection Deadline and close of the Opt-Out Period, in accordance with the Settlement Agreement.

### iv.  *No additional agreements*

Rule 23(e) requires the Court to consider any agreement reached between the Parties outside of the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking

approval must file a statement identifying any agreement made in connection with the proposal."). No such agreement exists in this case. Counsel Decl. ¶ 15.

### d.  The Settlement Treats Settlement Class Members Equitably

A class settlement need not require "pro rata distribution" (although pro-rated Alternate Cash Payments are one Settlement Benefit provided here); it must just be fair, reasonable and adequate. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007). This can be satisfied even where class members will be entitled to different amounts based on the benefits they select. *See Sciaroni*, 892 F.3d at 978. Here, all Settlement Class Members are eligible to file Claims for the same Settlement Benefits, if said benefits apply to the Claimant. All Settlement Class Members are eligible to submit Claims for (1) Compensation for Ordinary or Extraordinary Losses (if incurred and supported by documentation) or Alternate Cash Payments, and (2) Credit Monitoring. SA ¶ 3.4, 3.5. The proposed Settlement therefore treats all Settlement Class Members fairly and equitably relative to each other and in relation to the strengths of their claims.

### e.  The Settlement Satisfies the Factors Considered by the Eighth Circuit

All traditional factors considered in the Eighth Circuit likewise weigh heavily in favor of Preliminary Approval. *See Petrovic*, 200 F.3d at 1152 (relevant factors are relative merits of plaintiffs' claims, a court, defendant's ability to pay, anticipated length and complexity of further litigation, and amount of opposition to the settlement).

### i.  *Relative Merits of Plaintiffs' Claims*

As discussed *supra* in connection with the overlapping Rule 23(e) requirement of adequate relief for the Settlement Class, while Plaintiffs and Class Counsel strongly believe the claims presented in this case are meritorious and Plaintiffs would prevail at trial, they nonetheless

understand the risks and delays associated with prolonged litigation and believe the Settlement benefits here outweigh those risks. Counsel Decl. ¶¶ 12–13, 17, 19. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles, at the pleading stage and again with respect to class certification. *See, e.g., Logan*, 2024 U.S. Dist. LEXIS 126653; (dismissing all but one claim in data breach case); *Blackbaud*, 2024 U.S. Dist. LEXIS 86740 (denying class certification in data breach case).

Moreover, if Plaintiffs continued with litigation in lieu of Settlement, they and Settlement Class Members would face the likely face years of delays in obtaining access to the important and valuable Settlement Benefits. Absent Settlement, Plaintiffs face the specter of protracted litigation including objections to class certification, a summary judgment motion, defending expert opinions, trial, and appeals. *See In re Wawa*, 2023 U.S. Dist. LEXIS 184635, at *26 (noting data breach law "has not yet been fully developed" and the parties would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial"). Though Plaintiffs and Class Counsel believe in the strength of this case, they understand that these issues would present significant delay and risk, making settlement even more beneficial to the Settlement Class. Thus, this factor weighs in favor of Preliminary Approval.

ii.    *Complexity, Expense, and Duration of Litigation*

As discussed *supra* in connection with the overlapping Rule 23(e) requirement of adequate relief for the Settlement Class, data breach litigation is particularly complex because the law "has not yet been fully developed," and the Parties would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa*, 2023 U.S. Dist. LEXIS 184635, at *26; *see also Jackson,* 2024 WL 958726, at *4 (noting that "the technical issues involved in data breach cases are complex").

Plaintiffs and Class Counsel diligently prosecuted the Action, including investigating, researching, and filing initial complaints; coordinating with Plaintiffs' attorneys to consolidate all related cases into the instant Action; investigating, researching, and drafting the operative Consolidated Complaint; requesting and reviewing informal discovery from Defendant to assist in assessing claims and defenses for settlement discussions; and participating in extensive negotiations resulting in the Settlement. Counsel Decl. ¶¶ 2–6.

Without the Settlement, Plaintiffs and Class Counsel would face substantial time and expenses associated with contested class-certification proceedings, completing merits discovery, pretrial motion practice, trial, and appeal. *Id*. ¶ 17. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including expert witness fees. *Id*. ¶ 13. Thus, the complexity and expense required to engage in prolonged data breach litigation also weighs in favor of Preliminary Approval.

### iii.   *Defendant's Ability to Pay*

The factor is considered neutral where the defendant "is in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation." *Marshall v. NFL*, 787 F.3d 502, 512 (8th Cir. 2015). Here, Defendant has informed Class Counsel it is in good financial standing and able to pay for its obligations under the Settlement, or continue litigating the Action if necessary. Counsel Decl. ¶ 26.

### iv.   *Reaction to the Settlement*

While the Settlement Class's reaction to the Settlement will be an important consideration for the Court in determining whether to grant Final Approval, this factor is not quantifiable at the Preliminary Approval stage, as the Court has not yet ordered the Settlement Administrator to provide Settlement Class Members with Notice of the Settlement. Thus, any reaction of the

Settlement Class has not yet manifested beyond the putative Class Representatives' uniformly positive reaction. Counsel Decl. ¶ 16. Additionally, Class Counsel strongly support the Settlement based on their collective decades of experience litigating similar cases. *Id.* ¶ 18.

### C.    The Proposed Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "all that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (quotations and citations omitted).

The proposed Notice Plan is designed to satisfy Rule 23(c)(2)(B) and due process. *See* SA, Exs. A–C. Every Settlement Class Member will receive direct and individual notice via Postcard Notice sent by mail. SA ¶¶ 6.3, 6.4. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *Id.* The Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id.*

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives, the Fee Award that Class Counsel intend to seek, and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. SA, Exs. A–C.

The proposed direct Postcard Notice is the gold standard, and paired with the Settlement Website, Long Form Notice, and toll-free telephone number that provide further information to the Settlement Class. The Notice Plan thus warrants approval.

**D.       The Court Should Provisionally Appoint Class Counsel.**

In connection with Preliminary Approval of the Settlement and provisional certification of the Settlement Class, Plaintiffs request the Court appoint Gary M. Klinger of Milberg, PLLC, Jeff Ostrow of Kopelowitz Ostrow and Leanna A. Loginov of Shamis & Gentile, P.A. as Class Counsel. *See* Fed. R. Civ. P. 23(g) ("[A] court that certifies a class must appoint class counsel."). As set forth in detail in their accompanying Declaration, Class Counsel have decades of collective experience litigating complex consumer class actions, specifically including data privacy class actions like this case. Counsel Decl. ¶¶ 17, 28.   Class Counsel undertaken substantial work investigating Plaintiffs' claims, dedicating substantial resources and applying their wealth of knowledge of the applicable law to vigorously represent the interests of Plaintiffs and the Settlement Class since this litigation's inception through the excellent proposed Settlement now reached. *Id*. ¶¶ 2–6, 11. Considering Class Counsel's work in this Action and the resources Class Counsel's firms have dedicated to it, along with their expertise and years of experience in handling

similar data privacy actions, the Court should provisionally appoint Class Counsel for purposes of Settlement under Rule 23(g).

## V.    PROPOSED SCHEDULE OF EVENTS

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the Opt-out and Objection Deadlines, will be determined based on the date the Preliminary Approval Order is entered, if granted. Plaintiffs propose the following schedule, in accordance with the Settlement Agreement:

| | |
|---|---|
| **Notice Date (Postcard Notice Sent)** | 30 days after Preliminary Approval Order |
| **Notice Completion Date (Notice Plan Completed, Including Reminder Notice)** | 60 days after Notice Date |
| **Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 14 days before Objection Period ends |
| **Opt-Out Deadline** | 60 days after Notice Date |
| **Objection Deadline** | 60 days after Notice Date |
| **Deadline to Submit Claim Forms** | 90 days after Notice Date |
| **Final Approval Hearing** | _____, ___, at _____am/pm. |

## VI.    CONCLUSION

Plaintiffs, individually, and on behalf of others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), & (e), respectfully move for an order (1) conditionally certifying the proposed Settlement Class for the purpose of Settlement; (2) preliminarily approving the Settlement; (3) appointing Gary M. Klinger of Milberg, PLLC, Jeff Ostrow of Kopelowitz Ostrow P.A., and Leanna A. Loginov of Shamis & Gentile, P.A. as Class Counsel for Settlement purposes; (4) conditionally appointing Plaintiffs as Class Representatives; (5) approving the forms and

substance of the Notices, Notice Plan, Claim Form, and Claim process; (6) approving the procedures for Settlement Class Members to opt-out of or object to the Settlement; (7) appointing Simpluris as the Settlement Administrator and ordering it to implement the Notice Plan; (8) staying the Action pending Final Approval of the Settlement; and (9) scheduling a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's counsel.

A proposed Preliminary Approval Order is attached as **Exhibit D** to the Settlement Agreement.

Dated: December 17, 2025                     Respectfully submitted,

By:     */s/ Gary M. Klinger*
        Gary Klinger (*pro hac vice*)
        **MILBERG, PLLC**
        227 W. Monroe Street, Suite 2100
        Chicago, IL 60606
        Phone: (866) 252-0878
        gklinger@milberg.com

        Jeff Ostrow (*Pro Hac Vice*)
        **KOPELOWITZ OSTROW P.A.**
        1 West Las Olas Blvd., Ste. 500
        Fort Lauderdale, FL 33301
        Tel : 954.332.4200
        ostrow@kolawyers.com

        Leanna A. Loginov (*Pro Hac Vice*)
        **SHAMIS & GENTILE, P.A.**
        14 NE 1st Avenue, Suite 705
        Miami, FL 33132
        Telephone: 305-479-2299
        lloginov@shamisgentile.com

        ***Proposed Class Counsel for Plaintiffs and the Putative Settlement Class***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on December 17, 2025, the foregoing was filed electronically with the Clerk of Court using the CM/ECF System and was thereby served on all counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger