IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| SARAH FETES, ANTHONY BANGERT, DECLAN LAWSON, NICOLE CHURCH, DOUGLAS ARP, and BRIAR NAPIER, | ) ) ) | Case No. 3:25-cv-00067-SMR-SBJ |
| | ) | |
| Plaintiffs, | ) ) | ORDER ON MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND TO |
| v. | ) ) | PROVISIONALLY CERTIFY CLASS |
| | ) | |
| LEE ENTERPRISES INCORPORATED, | ) ) | |
| Defendant. | ) | |

Plaintiffs move for preliminary approval of a proposed class action settlement and provisional certification of a settlement class. The Court has reviewed the settlement agreement, the parties' submissions, and the applicable law. For the reasons stated below, the motion is GRANTED. [ECF No. 37].

## I.    BACKGROUND

According to the parties' submissions, this case arises from a data security incident that occurred in February 2025 affecting the computer systems of Lee Enterprises, Incorporated. The parties represent that the incident potentially compromised the private information of approximately 39,779 individuals, including Social Security numbers and medical information. Defendant sent notice letters to affected individuals beginning in June 2025.

Four related class actions were initially filed and subsequently consolidated into this action. Plaintiffs filed a consolidated complaint asserting claims for negligence, negligence *per se*, invasion of privacy, unjust enrichment, breach of fiduciary duty, breach of implied contract, and declaratory relief. [ECF No. 16 ¶¶ 229–322]. The parties then began settlement discussions,

1

exchanging informal discovery about the incident, the affected class, the compromised data, and Defendant's remedial measures. Following arm's-length negotiations, the parties reached the proposed settlement now before the Court.

The settlement establishes a $600,000 non-reversionary common fund. Class members may obtain credit monitoring services and claim up to $1,000 for ordinary losses, $3,000 for extraordinary losses, or elect an alternate cash payment. All class members will benefit from data security enhancements Defendant will implement. The fund covers notice and administration costs, attorney's fees and costs not exceeding one-third of the fund, and service awards up to $1,000 per class representative.

## II.    PROVISIONAL CLASS CERTIFICATION

### A. Legal Standard

Federal Rule of Civil Procedure 23(a) requires that four elements be satisfied before a class may be certified: numerosity, commonality, typicality, and adequacy of representation. The party seeking certification must also satisfy one of the three requirements set forth in Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that common questions predominate over individual issues and that class treatment be superior to other methods of adjudication.

When a class has not been previously certified, courts must first determine whether provisional certification is appropriate before granting preliminary approval. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For settlement classes, the Court need not consider manageability because no trial will occur. *Id.* The Court conducts a rigorous analysis to ensure Rule 23's requirements are satisfied, although the settlement context reduces or eliminates some concern present in litigation classes.

### B.  Application

#### 1.  Rule 23(a) Requirements

The parties represent that approximately 39,779 individuals comprise the proposed class. Joinder of such a number would be impracticable, satisfying numerosity.

Common questions satisfy this requirement.  All class members' claims arise from the same data security incident and Defendant's alleged failure to implement adequate cybersecurity measures.  Common questions include whether Defendant owed a duty to safeguard private information, whether Defendant breached that duty, and whether class members are entitled to relief.  These common questions are central to the resolution of the claims.

The parties contend that the named plaintiffs' claims are typical of the class because they arise from the same incident and involve the same theories of liability.  According to the complaint, all class members allege that their private information was compromised due to Defendant's inadequate data security practices.

Adequacy is satisfied in two respects.  First, according to the parties' submissions, the class representatives have committed to prosecuting this action on behalf of the class.  The record reflects that they have assisted counsel in investigating the claims and maintained regular contact throughout the proceedings.  Their interests align with the class, and no conflict appears between the representative and absent class members.  Second, proposed class counsel are experienced in complex class action litigation, particularly data breach cases, and have competently represented the class in reaching this settlement.

#### 2.  Rule 23(b)(3) Requirements

Common questions predominate over individual issues.  The settlement class members all suffered the same alleged injury—the compromise of their private information through the same

data security incident.  The central questions—Did Defendant maintain adequate security?  Did the security failure cause the incident?  Are class members entitled to relief?—are common to all. Individual questions about damages do not defeat predominance.  The United States Court of Appeals for the Eighth Circuit has recognized that common issues predominate when "all class members were affected by a uniform policy enforced on a company-wide basis."  *Waldschmidt v. Union Pac. R.R.*, 4:21CV3124, 2025 WL 2718975, at *7 (D. Neb. Sept. 24, 2025).

Class treatment is superior to other methods of adjudication.  Individual litigation of nearly 40,000 claims would be inefficient and impractical.  Many class members likely suffered losses too small to justify individual litigation.  A single, centralized proceeding serves judicial economy and the interests of class members far better than thousands of individual actions.  No unusual difficulties in managing this class action appear likely.

### 3.   Settlement Class Definition

The Court therefore provisionally certifies the following settlement class for settlement purposes: All persons identified as being among those individuals impacted by the Data Security Incident, including all who were sent a notice of the Data Security Incident.  Excluded from the class are: (1) the judges presiding over this action and members of their immediate families and staff; (2) Defendant and its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant has a controlling interest; (3) persons who timely and properly opt out; and (4) the successors or assigns of any excluded person.

Sarah Fetes, Anthony Bangert, Declan Lawson, Nicole Church, Briar Napier, and Douglas Arp are designated as class representatives.  Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeff Ostrow of Kopelowitz Ostrow P.A., and Leanna A. Loginov of Shamis & Gentile, P.A. are appointed as class counsel pursuant to Rule 23(g).

### III.    PRELIMINARY APPROVAL OF SETTLEMENT

*A.  Legal Standard*

Federal Rule of Civil Procedure 23(e) provides that a class action settlement requires court approval.  Preliminary approval is the first step in a two-stage process.  At this stage, the Court evaluates whether the proposed settlement falls within the range of possible approval—whether it is free from obvious deficiencies and warrants notice to the class.  *Manual for Complex Litigation* § 21.632.  The standard is lower than at final approval; the question is whether the settlement has "glaring substantive or procedural deficiencies."  *Schoenbaum v. E.I. DuPont de Nemours & Co.*, No. 4:05CV01108 ERW, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009).

The Federal Rules of Civil Procedure direct courts to approve a settlement only if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The rule identifies four factors for evaluating fairness:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Courts in this circuit also consider: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (citation omitted).  Settlement agreements enjoy a strong presumption of fairness.  *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999).

### B.  Analysis Under Rule 23(e)(2)

#### 1.  Adequate Representation

The class representatives and class counsel have adequately represented the class.  The parties represent that the named plaintiffs actively participated in the litigation, maintaining communication with counsel and providing information and documents.  Their interests align with the class, and nothing suggests any conflict.

Class counsel have substantial experience in complex class action litigation, particularly data breach cases.  According to the parties' submissions, counsel investigated the claims before negotiating settlement terms, including analyzing informal discovery and examining the relevant legal issues.  The parties then negotiated the settlement terms.  This preparation and experience support a finding of adequate representation.

#### 2.  Arm's-Length Negotiation

The settlement resulted from arm's-length negotiations between experienced counsel.  The parties conducted informal discovery before negotiating settlement terms.  Counsel exchanged documents and information regarding the incident, the class composition, the compromised data, and Defendant's remedial measures.  This discovery positioned counsel to assess the strengths and weaknesses of the claims and defenses.  The parties negotiated substantive terms before discussing attorney's fees and service awards—a sequence that reduces concern about conflicts of interest.

The record does not reveal collusion or improper influence. The procedural history supports the conclusion that negotiations were fair.

### 3. Adequate Relief

The settlement provides adequate relief to the class, particularly when weighed against the costs, risks, and delay of continued litigation. The Court considers the four specific factors identified in Rule 23(e)(2)(C).

### a. Costs, Risks, and Delay

Data breach litigation presents substantial risks and complexities. The law in this area continues to develop, and plaintiffs face significant hurdles at multiple stages of litigation. Class certification is uncertain, particularly in data breach cases where courts have denied certification based on predominance concerns or individualized damages issues. *See In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2023 WL 6690705, at *9 (E.D. Pa. Oct. 12, 2023) ("class certification is rare" in data breach cases) (citation omitted); *S. Indep. Bank v. Fred's, Inc.*, CASE No. 2:15-CV-799-WKW, 2019 WL 1179396, at *19 (M.D. Ala. Mar. 13, 2019) (denying certification due to individualized causation issues); *McGlenn v. Driveline Retail Merch., Inc.*, Case No. 18-cv-2097, 2021 WL 165121, at *10–11 (C.D. Ill. Jan. 19, 2021) (same).

Summary judgment presents additional risks. Even if plaintiffs survived those challenges, trial would require substantial expense, including expert witness fees. An appeal would likely follow regardless of the trial outcome, further delaying any recovery and adding uncertainty.

The settlement provides immediate, certain relief. Under the settlement's terms, class members may claim compensation for documented losses up to $1,000 for ordinary losses or $3,000 for extraordinary losses, or may opt for an alternate cash payment. All class members may obtain credit monitoring services with identity theft insurance to protect against future harm.

These benefits are guaranteed; continued litigation might yield no recovery. The settlement also secures data security enhancements that will benefit all class members. This factor supports preliminary approval.

### b. Distribution Method

Under the settlement agreement, the settlement administrator will send direct notice to all class members and establish a settlement website containing information and claim forms. Class members will have 90 days to submit claims using a plain-language form designed for easy completion. The documentation requirements for ordinary and extraordinary losses are designed to deter fraudulent claims while permitting legitimate claims to recover. The alternate cash payment provides relief to class members without documented losses. The distribution method is both effective and appropriate.

### c. Attorney's Fees

Class counsel will seek fees of one-third of the settlement fund ($200,000) plus reasonable litigation costs. The parties represent that they did not discuss fees until after agreeing to substantive settlement terms. The requested percentage falls within the range commonly approved in this Circuit for contingent fee class actions. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865–66 (8th Cir. 2017). The requested amounts raise no concerns at this stage, although the Court will evaluate its reasonableness at the final approval hearing.

Service awards compensate class representatives for the time and effort they devoted to representing the class and for any risks they assumed in doing so. The requested amounts of up to $1,000 per representative appear reasonable at this preliminary stage, though the Court will also evaluate their appropriateness at final approval.

### d.   Side Agreements

The parties represent that no side agreements exist and that the settlement agreement contains all agreements between them.

## 4.   Equitable Treatment

The settlement treats class members equitably by making all class members eligible to submit claims for the same benefits.  Class members who suffered documented losses may claim compensation, while those who prefer not to document losses or who incurred no documented losses may claim an alternate cash payment.  All class members may also claim credit monitoring and will benefit from the data security enhancements.  This structure accounts for different circumstances among class members while ensuring equitable treatment without arbitrary distinctions.

## 5.   Additional Considerations

The settlement also satisfies the additional factors considered in this Circuit.  These factors supplement the Rule 23(e)(2) analysis and provide further context for evaluating the settlement's fairness.

### a.   Relative Merits

As discussed above, Plaintiffs' claims face substantial litigation risks despite appearing facially meritorious.  Data breach plaintiffs must overcome significant hurdles in establishing standing, causation, and damages.  *See, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (standing requires concrete harm); *In re SuperValu, Inc. Customer Data Sec. Breach Litig.*, 870 F.3d 763, 769–70 (8th Cir. 2017) (dismissing claims where plaintiffs alleged only risk of future harm); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 31–33 (D. Me. 2013) (denying certification due to individualized causation); *In re TJX Cos. Retail Sec.*

*Breach Litig.*, 246 F.R.D. 389, 397–98 (D. Mass. 2007) (same). The settlement's value, measured against these risks, supports preliminary approval.

### b. Complexity and Expense

Continued litigation would require substantial time and expense. The parties would face contested class certification, extensive merits discovery, expert reports, summary judgment briefing, trial, and likely appeal. Data breach cases involve complex technical and legal issues. The settlement avoids these burdens while delivering meaningful relief.

### c. Defendant's Financial Condition

Defendant has represented that it can satisfy its obligations under the settlement or, if necessary, continue litigating the case. This factor is neutral.

### d. Opposition

Because notice has not yet been sent, the class's reaction to the settlement cannot be assessed. Class counsel, however, support the settlement based on their extensive experience with similar cases. The Court will evaluate class member response at the final approval stage. The settlement is fair, reasonable, and adequate, and warrants preliminary approval.

### IV.    NOTICE TO THE CLASS

The Due Process Clause demands notice that is "reasonably calculated" to inform class members of the pending litigation and afford them an "opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Rules require "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" for Rule 23(b)(3) classes. Fed. R. Civ. P. 23(c)(2)(B). The notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement

-10-

serves their interests." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (citation omitted).

The proposed notice plan satisfies these requirements.  Under the plan, the settlement administrator will provide direct mail notice to all class members at addresses in Defendant's records, will update addresses using the National Change of Address Registry, and will attempt to locate updated addresses for undeliverable mail.  The postcard notice includes a tear-off claim form and provides essential information about the settlement, including the settlement benefits, how to submit a claim, the claims deadline, how to opt out or object, the opt-out and objection deadlines, the final approval hearing date, and how to obtain more information.  The settlement administrator will also establish a website containing detailed information, including the long-form notice, the settlement agreement, the preliminary approval order, the complaint, and instructions for submitting claims, opting out, or objecting.  A toll-free telephone number will provide additional information.

The proposed notices use plain language and appear readily understandable.  They explain the litigation, the settlement terms, and class members' options in straightforward terms.  The notice plan employs the most reliable method of providing notice—direct mail to known addresses—and supplements that notice with a comprehensive website and telephone line.  The Class Action Fairness Act notice requirements will also be satisfied.

The notice plan constitutes the best notice practicable, appears reasonably calculated to apprise class members of the settlement and their rights, and appears to satisfy Rule 23(c)(2)(B) and due process.  The notice plan is approved.

## V.    SETTLEMENT ADMINISTRATION

Simpluris is appointed as settlement administrator.  The settlement administrator shall implement the notice plan, establish and maintain the settlement website and toll-free telephone line, process claims, and perform all other tasks required for settlement administration.  All reasonable costs of notice and administration will be paid from the settlement fund.

Within 10 business days of this order, Defendant shall provide the settlement administrator with the names and contact information of all settlement class members.  The settlement administrator shall send all notices required by the Class Action Fairness Act, 28 U.S.C. § 1715, within the time required by statute.  Class counsel and Defendant's counsel shall cooperate in preparing these notices.

## VI.    PROCEDURES FOR CLASS MEMBERS

### A.  *Submitting Claims*

Class members who wish to receive settlement benefits must submit a claim form to the settlement administrator.  Claims may be submitted by mail or through the settlement website. The claims deadline is 90 days after the notice date.

To claim compensation for ordinary losses (up to $1,000), class members must provide appropriate documentation of out-of-pocket expenses, credit monitoring purchases, or time spent addressing the incident.  To claim compensation for extraordinary losses (up to $3,000), class members must provide appropriate documentation showing that the loss was an actual, unreimbursed monetary loss more likely than not caused by the data security incident.  To claim an alternate cash payment, class members need not provide documentation; the payment amount will be calculated on a *pro rata* basis after accounting for other approved claims and settlement costs.

Class members may also claim credit monitoring services by indicating that election on the claim form.

The settlement administrator will review claims for completeness and validity. The administrator may request additional information if needed to verify a claim. Any class member who fails to submit a timely and valid claim will not receive settlement benefits but will remain bound by the settlement and the release of claims if the settlement receives final approval.

### B.  Opting Out

Class members may exclude themselves from the settlement by submitting a written request to opt out to the settlement administrator. The opt-out deadline is 60 days after the notice date. The request must be postmarked by that date. To be valid, an opt-out request must:

- Identify the case name and number;
- State the class member's name, address, telephone number, and unique identifier;
- Be physically signed by the person seeking to opt out; and
- Include a statement requesting exclusion from the settlement class.

Opt-out requests must be submitted on an individual basis. "Mass" or "class" opt-outs are not permitted. Class members who timely and validly opt out will forfeit all settlement benefits and rights but will not be bound by the judgment or release of claims.

Within five days after the opt-out deadline, the settlement administrator shall provide class counsel and Defendant's counsel a declaration stating the number of class members who have excluded themselves. Class counsel shall file that declaration with the Court.

### C.  Objecting

Class members who do not opt out may object to the settlement, the proposed fee award, or the proposed service awards. Objections must be submitted in writing to the settlement

administrator, postmarked no later than 60 days after the notice date. Objectors may also appear at the final approval hearing. To be considered, an objection must:

- State the class member's full name, current address, unique identifier, and telephone number;

- Include proof of class membership (such as a copy of the notice or the data breach notification letter);

- Identify the specific grounds for the objection;

- Identify all counsel representing the class member, if any;

- Include a list of all other cases in which the objector or the objector's counsel has filed an objection to a proposed class action settlement in the past five years (including case name, court, and docket number);

- State whether the class member intends to appear at the final approval hearing; and

- Bear the objector's signature.

Class members who fail to object in accordance with these requirements will be deemed to have waived any objection and may not appeal or otherwise challenge the settlement, the release of claims, the final approval order and judgment, the fee award, or the service awards.

## VII.    FINAL APPROVAL HEARING AND RELATED MATTERS

A final approval hearing is scheduled for **June 30, 2026 at 10:00 a.m.** in Des Moines - Room 510 - 5th Floor Southeast. At that hearing, the Court will determine whether to grant final approval of the settlement, finally certify the class, approve the fee and cost award to class counsel, approve the service awards to class representatives, and enter final judgment. The hearing may be continued without further notice to the class.

Class counsel shall file the motion for final approval and the motion for attorney's fees, costs, and service awards no later than 14 days before the objection deadline. Fees are requested in an amount up to one-third of the settlement fund ($200,000) plus reasonable costs. Service

awards are requested in amounts up to $1,000 per class representative.  These requests appear reasonable at this stage, but the Court will defer ruling until the final approval hearing.

All proceedings in this case, except those necessary to implement this order or the settlement, are stayed pending the final approval hearing.

If the settlement is not finally approved, is terminated under its terms, or fails to become effective, this order shall become void.  In that event, the settlement shall be of no force or effect. Neither the settlement nor any order related to it (including this order) may be used or referred to for any purpose, including as evidence of wrongdoing by Defendant, as evidence that class certification is appropriate, or as evidence that the claims lack merit.

The Court retains jurisdiction over this action to ensure that the settlement is properly administered and implemented.

## VIII.    CONCLUSION

The proposed settlement falls within the range of possible approval and warrants notice to the class.  Plaintiffs' motion for preliminary approval is GRANTED.  [ECF No. 37].  The schedule of deadlines set forth above shall govern the remaining proceedings.

IT IS SO ORDERED.

Dated this 23rd day of January, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT