**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **SARAH FETES, ANTHONY BANGERT, DECLAN LAWSON, NICOLE CHURCH BRIAR NAPIER, and DOUGLAS ARP,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**LEE ENTERPRISES INCORPORATED,**<br><br>Defendant. | Case No. 3:25-cv-00067-SMR-SBJ |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL, ATTORNEYS' FEES AND EXPENSES AWARD, AND SERVICE AWARD**

Plaintiffs[1] and Class Counsel respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Expenses, and Service Awards and Final Approval of Class Action Settlement.

## I.    INTRODUCTION

On January 23, 2026, the Court granted Preliminary Approval of the Settlement and ordered Notice be given to the Settlement Class. *See* Order on Mot. for Prelim. Approval of Class Settlement, Doc. No. 38 ("Preliminary Approval Order" or "PAO"). The Settlement, reached after extensive arm's-length negotiations, provides substantial relief for the 39,757 individuals comprising the Settlement Class. The Settlement will fully and finally resolve all claims in the Action, arising from a February 2025 Data Security Incident involving Defendant's systems that potentially impacted the Private Information of the Settlement Class Members.

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section 1 of the Settlement Agreement ("SA"), attached as Exhibit A to Plaintiffs' Memorandum in Support of their Motion for Preliminary Approval (Doc. No. 37-2).

The Settlement will bring certainty, closure, and significant and valuable relief to the Settlement Class, as opposed to what otherwise would likely be contentious and costly litigation. The Settlement establishes a $600,000.00 non-revisionary common fund (the "Settlement Fund"). Settlement Class Members may submit Claims for one of three types of Settlement Payments and one year of three-bureau credit monitoring services. The Settlement Fund covers Administrative Expenses, court-awarded attorneys' fees to Class Counsel not exceeding one-third of the Settlement Fund, reasonable costs and expenses and court-awarded Service Awards to the Class Representatives up to $1,000.00 per class representative. The Settlement also provides forward-looking relief via Defendant's business practice changes directed at improved data security for Settlement Class Members' Private Information.

Following Preliminary Approval, the Settlement Administrator disseminated Notice to the Settlement Class. Direct individual Notice was provided via the Short-Form Notice sent by U.S. mail. *See* Declaration of Settlement Administrator Simpluris Inc. in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Admin. Decl."), attached as ***Exhibit B*** hereto, ¶¶ 10, 11. At present, the Settlement Administrator has received just three requests for exclusion from the Settlement Class and ***zero*** objections to the Settlement. *Id.* ¶¶ 20–23. With over a month remaining before the Claims Deadline, there is already an excellent Claims rate of 8.16%. *Id.* ¶ 14. The Settlement Class's overwhelmingly positive response affirms the Court's initial determination at Preliminary Approval that the Settlement warrants approval as fair, reasonable, and adequate. *See* PAO at 10.

Class Counsel zealously prosecuted the Settlement Class's claims, achieving the Settlement only after extensive investigation and arm's length negotiations. As compensation for the significant Settlement Benefits conferred, Class Counsel respectfully request an attorneys' fee

award of $200,000.00 (one-third of the Settlement Fund), and reimbursement of reasonable litigation costs to be paid from the Settlement Fund. This request is reasonable and appropriate considering the substantial risks presented in prosecuting this Action in a rapidly evolving area of law, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for Service Awards of $1,000.00 to each Class Representative for their work in achieving the Settlement on behalf of the Settlement Class to be paid from the Settlement Fund.

For the reasons set forth herein, the Court should enter a Final Approval Order finally certifying the Settlement Class, finally approving the Settlement, and granting the request for attorneys' fees, expenses, and Service Awards.

## II.    STATEMENT OF FACTS AND INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this Action, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Motion for Preliminary Approval and its accompanying Exhibits, including the proposed Settlement Agreement, filed December 18, 2025 (Doc. No. 37).

### A.  The Notice Plan Has Been Successfully Implemented.

The Notice Plan has been implemented in accordance with the Settlement Agreement and the Preliminary Approval Order, and the Settlement Class's reaction has been overwhelmingly positive. Upon receipt of the Class List, the Settlement Administrator reviewed the data and removed 22 exact duplicates to confirm the final Class List contained 39,757 Settlement Class Members. Admin. Decl. ¶ 9. On February 23, 2026, the Settlement Administrator mailed the Postcard Notice to the 39,757 Settlement Class Members for whom a valid mailing address was available. *Id*. ¶ 10. Of the 39,757 Postcard Notices mailed to Settlement Class Members, 6,794

were returned by USPS, and 215 Postcard Notices were successfully re-mailed. *Id*. ¶ 11. This represents a reach rate of 83.46%, which is well over the 70% threshold for adequate notice.[2] Additionally, on February 3, 2026, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715, the Settlement Administrator completed a mailing that informed the appropriate state and federal Attorneys General about the Settlement on behalf of Defendant. *Id*. ¶ 5.

As of April 2, 2026, the Settlement Administrator has received 3,244 Claim Forms which Simpluris is in the process of reviewing and validating. Admin. Decl. ¶ 14. The Claims Deadline is May 26, 2026, and with over a month left to submit a Claim Form, this already represents an excellent claims rate of 8.16%. With the Opt-Out Deadline and Objection Deadline on April 24, 2026, Simpluris has received three timely requests for exclusion from the Settlement Class and no objections to the Settlement. *Id*. at ¶¶ 20-23.

**B. Summary Of The Settlement**

*1. Settlement Class*

The Settlement Class is defined as follows:

All persons identified as being among those individuals impacted by the Data Security Incident, including all who were sent a notice of the Data Security Incident.

SA ¶ 1.47. Excluded from the Settlement Class are (1) the Judge(s) presiding over the Action and members of their immediate families and their staff; (2) Defendant and its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, has a controlling interest; (3) natural persons who properly execute and submit a request to opt out prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person. *Id*.

---

[2] FED. JUD. CTR., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

### 2. *Settlement Consideration*

The Settlement establishes a non-reversionary $600,000.00 Settlement Fund, from which Settlement Class Members may submit Claims for the following Settlement Benefits: (1) Settlement Payments of either (a) Compensation for Ordinary Losses up to $1,000.00 per Claimant, (b) Compensation for Extraordinary Losses up to $3,000.00 per Claimant, or (c) pro-rated cash payments; and (2) one year of three-bureau credit monitoring services with at least $1,000,000 in fraud protection. *Id.* ¶¶ 3.3–3.5. Additionally, the Settlement secures meaningful prospective relief through Defendant's commitment to implement data security cyber security enhancements and improvements, to be paid by Defendant separately and in addition to the Settlement Fund. *Id.* ¶ 2.1–2.2. Such enhancements include expansion of third-party security monitoring, improvements in identity and access management, improvements in password management systems, enhancements to network segmentation and firewalls, and improvements in policies, processes and procedures. *Id.* The cost of this prospective will be paid by Defendant separately and in addition to the Settlement Fund, and provides meaningful, forward-looking benefits to all Settlement Class Members, regardless of whether they submit a Claim. *Id.*

The Settlement is intended to exhaust the Settlement Fund. *Id.* ¶ 3.12. However, to the extent any monies remain in the Net Settlement Fund more than 120 days after the distribution of all payments to Settlement Class Members, the remaining amount, if any, shall be distributed to a *cy pres* recipient agreed to by the Parties and subject to the approval of the Court. *Id.*

### 3. *Releases*

Following the Release Effective Date, each Class Representative and all Settlement Class Members who have not submitted a timely and valid request to opt-out of the Settlement, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and

any other person purporting to claim on their behalf, shall be deemed to have released, acquitted, and forever discharged Defendant and the Released Parties from any and all Released Claims including, as to Class Representatives only, any Unknown Claims. SA ¶ 4.

### 4. *Service Awards; Fee Award and Costs*

The Settlement Agreement provides that Class Counsel may seek reasonable Service Awards for the Class Representatives of up to $1,000.00 each. *Id.* ¶ 8.1. The Service Awards are meant to compensate the Class Representatives for their efforts in this Action, including serving as named Plaintiffs, assisting in Class Counsel's investigation, maintaining contact with Class Counsel, reviewing case documents, being prepared to assist with discovery, and answering Class Counsel's questions. *See* Joint Declaration Of Counsel Supporting Motion For Attorneys' Fees, Expenses, And Service Award, attached as **Exhibit A** hereto, ("Counsel Decl.") ¶¶ 11, 51. The Parties did not discuss Service Awards to Class Representatives until after the substantive terms of the Settlement had been agreed upon, thereby avoiding any potential conflict with the Settlement Class. *Id.* ¶ 8; SA ¶ 8.4.

Plaintiffs also move the Court for a reasonable attorneys' fee award to Class Counsel of one-third of the Settlement Fund ($200,000.00), and reimbursement of reasonable litigation expenses. SA ¶ 9.1. The Parties did not discuss the payment of attorneys' fees or costs, until after the substantive terms of the Settlement had been agreed upon, and the Settlement is not contingent on approval of Class Counsel's request for fees and costs; if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force. *Id.* ¶ 9; Counsel Decl. ¶ 8. The Notices advise the Settlement Class of these intended requests and further information on how to object. SA ¶¶ 6.8, 6.9.

## III.    ARGUMENT AND MEMORANDUM OF LAW

**A. The Court Should Grant Final Approval of the Settlement.**

The Eighth Circuit has recognized that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (cleaned up). "The court's role in reviewing a negotiated class settlement is ... 'to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015). "In the Eighth Circuit, courts have traditionally focused on four factors when analyzing the fairness, reasonableness, and adequacy of a proposed settlement: (1) 'the merits of the plaintiff's case, weighed against the terms of the settlement;' (2) 'the defendant's financial condition;' (3) 'the complexity and expense of further litigation;' and (4) 'the amount of opposition to the settlement' (the "*Van Horn* Factors")." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860 (S.D. Iowa 2020) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Rule 23 of the Federal Rules of Civil Procedure requires a finding that (1) the class representatives and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the relief provided to the class is adequate; and (4) the settlement treats Class Members equitably.

Based upon the foregoing reasons—and those upon which the Settlement Agreement was preliminarily approved—the Court should grant final approval of the Settlement Agreement.

*1. The Class Representatives and Class Counsel Adequately Represented the Class and the Proposed Settlement is the Product of an Arms' Length Negotiation Supported by Experienced Counsel.*

Rule 23(e)(2)(A) requires class representatives and class counsel to have adequately represented the class. Here, Plaintiffs have put themselves forth as the public face of this litigation, assisted with Class Counsels' investigation, reviewed case documents, prepared themselves to

assist with discovery, reviewed filings, provided Class Counsel with documents and other evidence, and remained in contact throughout the litigation and answered Class Counsels' questions. Counsel Decl. ¶¶ 11, 51. Class Counsel are experienced data privacy litigators with decades of combined experience. *Id.* ¶ 18, 46 & Exs. 1–3. Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Settlement Class Members, analyzed the documents and information produced by Defendant through informal discovery, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this Action, as well as the applicable laws of Iowa and other relevant jurisdictions. *Id.* ¶ 29. Following the Parties' agreement to the Settlement terms, after months of hard-fought, arm's-length negotiations, Class Counsel worked diligently to draft and finalize the proposed Settlement and its exhibits, revise those drafts, and negotiate the details of the final proposed Settlement with Defendant's counsel. *Id.* ¶¶ 6-7.

Accordingly, Class Counsel and Class Representatives have adequately represented the Settlement Class here. This factor therefore weighs in favor of Final Approval.

### 2. *The Relief for the Settlement Class is Adequate when Weighed Against the Risks Attendant to Continued Litigation.*

Privacy litigation and data breach cases in particular present unique challenges. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty of issues in data breach class actions);*, In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023) (commenting that data breach litigation is "an area of law that has not yet been fully developed"); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *7 (S.D. Fla. July 8, 2023) ("This is not only a complex case—it lies within an especially risky field of litigation: data breach."). If the case were to proceed without settlement,

there would be considerable expense incurred from expert reports, discovery, and numerous factual and legal arguments regarding liability, damages, and injunctive relief, without any guarantee of relief for the Settlement Class. There is a risk that a jury might award little or nothing in the way of damages and even if Plaintiffs prevailed through summary judgment and trial, they and the Class would still face the potential for prolonged appeals.

Here, Class Counsel obtained a recovery for Plaintiff and the Settlement Class that provides meaningful monetary and injunctive relief now. All Settlement Class Members may claim up to $3,000 in reimbursement for losses or an estimated $35 *pro rata* share of the Net Settlement Fund. SA ¶¶ 3.3-3.4. This sure and certain cash recovery far outweighs the risk of recovering nothing. Moreover, all Settlement Class Members may claim credit monitoring services with at least $1,000,000 in fraud protection and all Class Members will benefit from Defendant's commitment to implement data security enhancements and improvements. *See id.* ¶¶ 2.1-2.2, 3.5. "As a general matter, injunctive relief is properly considered as part of a court's analysis of whether a settlement is fair, reasonable, and adequate." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 862 (S.D. Iowa 2020) (collecting cases). Here, these forward-looking measures are intended to address the very risks Plaintiffs alleged int their Complaint and have real value to the Settlement Class. The Settlement affords immediate and certain relief to Settlement Class Members and eliminates the risks attendant at trial and the possibility of lengthy appeals. "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

3. ***The Settlement Treats Settlement Class Members Equitably.***

Rule 23(e)(2)(D) "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others. A class settlement need not require "pro rata distribution" (although pro-rated Settlement Payments are one Settlement Benefit provided here); it must just be fair, reasonable and adequate. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007). This can be satisfied even where class members will be entitled to different amounts based on the benefits they select. *See Sciaroni*, 892 F.3d at 978. Here, all Settlement Class Members are eligible to file Claims for the same Settlement Benefits, if said benefits apply to the Claimant. All Settlement Class Members who incurred documented losses attributable to the Data Security Incident may submit Claims for Compensation for Ordinary and Extraordinary Losses. SA ¶ 3.3. Settlement Class Members without documented losses are eligible to submit Claims for pro-rated cash Settlement Payments. *Id.* ¶ 3.4. All Settlement Class Members can also claim one free year of credit monitoring services in addition to a Settlement Payment. *Id.* ¶ 3.5-3.6. And all Settlement Class Members will benefit from Defendant's data security enhancements to protect their Private Information on a prospective basis. *Id.* ¶¶ 2.1–2.2. The proposed Settlement therefore treats all Settlement Class Members fairly and equitably relative to each other and in relation to the nature of their injury.

### 4. *Defendant's Ability to Pay*

Finally, the defendant's financial condition is often considered neutral when, as here, the defendant's ability to pay is not an issue. *Dryer v. National Football League*, No. 09-2182, 2013 WL 5888231, at *4 (D. Minn. Nov. 1, 2013). "However, just because defendants could pay more does not necessarily mean they should have to pay more than the parties negotiated to settle these claims." *Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146, 2016 WL 223721, at *19 (W.D. Pa. Jan.

19, 2016). There is no evidence in the record regarding Defendant's ability to pay. Therefore, this factor is neutral.

**5.** ***The Settlement Class's Response to the Settlement Is Overwhelmingly Positive with No Objections To Date.***

As of April 1, 2026, the Settlement Administrator has received 3,244 Claim Forms. Admin. Decl. ¶ 14. The Claim period runs through May 26, 2026, and with over a month left to submit a Claim. The claims rate of over 8% in this case already far exceeds the lower-end of claims rates deemed acceptable in class actions by the 8th Circuit. *See*, *e.g.*, *Pollard v. Remington*, 896 F.3d 900, 905, 906-07 (8th Cir. 2018) (approving claims rate of .29%); *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n 60 (3d Cir. 2011) (noting "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns"); *Sullivan*, 667 F.3d at 329 n.60 (holding that "a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

And, with the Opt-Out and Objection Deadlines on April 24, 2026, the Settlement Administrator has received three timely requests for exclusion from the Settlement Class, and no objections to the Settlement. Admin. Decl. ¶¶ 20-23. "Such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement." *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 230 (S.D. Iowa 2009) (quoting *Mangone v. First USA Bank,* 206 F.R.D. 222, 227 (N.D.Ill.2001)); *see also In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, No. 11-MD-2247, 2012 WL 2512750, at *8 (D. Minn. June 29, 2012), *aff'd*, 716 F.3d 1057 (8th Cir. 2013) ("Twenty-six Objectors, out of a class likely totaling more than 30,000, represents only token opposition to this Settlement."). Moreover, CAFA notice was served by Defendant on the various states, and no government entity has commented on the Settlement.

The lack of any objection and the overwhelmingly positive reaction of the Settlement Class thus supports Final Approval.

Based on all the factors enumerated in Rule 23(e)(2) plus additional factors sometimes considered by the Eighth Circuit and courts in this District, Plaintiffs have established that the Settlement is fair, adequate, and reasonable, and the Court should grant Final Approval of the Settlement. Both the Notice Plan and its execution far exceed the Due Process requirements.

**B. The Court Should Grant the Request For Attorneys' Fees, Costs, And Service Awards.**

Rule 23(h) provides, "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). District courts in the Eighth Circuit have discretion to use either of two  approaches when assessing the reasonableness of a proposed fee award in a class action settlement: (1) the "lodestar" method, which looks at the hours expended by an attorney multiplied by a reasonable hourly rate of compensation,; and (2) the "percentage of the benefit" method, which allows for an award that is a percentage of a common settlement fund. *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 883–84 (S.D. Iowa 2020) (citing *In re Target Corp.*, 892 F.3d at 977; *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244–45 (8th Cir. 1996)). If the lodestar approach is employed the lodestar amount "can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnston*, 83 F.3d at 244. The factors courts consider include the following:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*Zoll v. E. Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 n. 11 (8th Cir. 1978). Court's may award a multiplier in their discretion; however, when representation is taken on a contingency basis, courts regularly award enhancements. As the *Swinton* court explained "In cases, such as here, where an individual's damages may be relatively modest, plaintiffs may be unwilling (or unable) to pay attorney's fees and costs in advance. Thus, were it not for statutory provisions allowing for awards of attorney's fees and costs to prevailing parties, and attorneys willing to assume representation on a contingent fee basis because of those provisions, it would be difficult for a plaintiff to obtain legal representation in such matters. Consequently, public policy favors adequate fee awards in cases involving fee-shifting statutes so as to encourage aggrieved plaintiffs to bring such actions and to provide incentives for counsel to take them on a contingent fee basis." *Swinton*, 454 F. Supp. 3d at 887.

Here, Counsels' request for fees is reasonable. Thus far, Class Counsel have devoted significant time and resources to this case, including 194.76 hours and incurred a lodestar of $133,035.80.[3] *See* Counsel Decl. ¶ 30. Class Counsel have also accrued approximately $2,808.11 in reasonable litigation expenses for which they seek reimbursement as provided for under the Settlement. *Id*. ¶ 32. Class Counsel expect to spend approximately 30 additional hours before closure of the case, due to the time required to carry out Settlement Administration and to prepare for and attend the Final Approval Hearing. *Id.* ¶ 31. The requested fee of $200,000.00 should be approved, as it currently represents a modest 1.5 multiplier of the lodestar, which is well within the range awarded by Eighth Circuit courts. *See Swinton*, 454 F. Supp. 3d at 888 (citing *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017)) ("[L]odestar multipliers under two are

---

[3] Class Counsels' rates are consistent with, and often lower than, the Legal Services Institute *Laffey* Matrix—a widely accepted fees matrix, and consistent with those charged by similarly experienced attorneys in other nationwide class actions.

commonly approved in the Eighth Circuit."). The requested fee is also reasonable under the factors outlined above.

    1. ***The Requested Attorneys' Fees are Reasonable Given The Time And Labor Required, The Novelty And Difficulty Of The Questions Involved, And The Skill Requisite To Perform The Legal Service Properly.***

Data breach law is rapidly evolving, as Courts and legislatures are regularly expanding their expertise and understanding of acceptable and appropriate data security protocols implemented to protect the PII of individuals like the Settlement Class Members here. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). Indeed, "many [data breach cases] have been dismissed at the pleading stage." *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222, at *36 (N.D. Cal. Sep. 12, 2011). Further, a successful outcome could only ensue, if at all, after prolonged and arduous litigation with an attendant risk of drawn-out appeals. As such, these cases are particularly risky for plaintiffs' attorneys. *Id.*

Despite the early stage of litigation at which this case settled, Class Counsel expended significant effort before ultimately negotiating and finalizing the Settlement Agreement on behalf of the Settlement Class, including: conducting an investigation into the facts regarding Plaintiffs' claims and class members' claims; researching law relevant to, and preparing, Plaintiffs' class action complaint; researching law relevant to Defendant's defenses to Plaintiff's claims; exchanging informal discovery; engaging in months of arms-length negotiations; negotiating and preparing the Parties' Settlement Agreement, along with the proposed class notice and claim form;

preparing Plaintiffs' motion for preliminary approval of the class action settlement; working with the Settlement Administrator to ensure the timely completion of the notice program and processing of claims; preparing the instant motion for final approval and attorneys' fees, costs, and a service award; and conferring with Plaintiffs throughout the case.

Counsel also anticipate completing additional work throughout settlement administration, and in preparing and arguing Plaintiff's motion for final approval of the Settlement. Thus, given the time, skill, and expertise required to successfully litigate this case, the novelty of evolving questions at issue, and the time and labor required of Class Counsel, the fee request should be granted.

### 2. Class Counsel Took This Litigation On A Contingency Basis And Spent Time That Would Have Been Spent On Other Potentially Fee-Generating Cases.

Class Counsel took this case on a purely contingent basis. Counsel Decl. ¶ 37. This matter has required Class Counsel to spend significant time on this litigation that could have been spent on other fee-generating matters. *Id.* ¶ 42. Because Class Counsel undertook representation of this matter on a contingency-fee basis, they shouldered the risk of expending substantial resources with the possibility of no monetary gain in the event of an adverse judgment. If not devoted to litigating this action, from which any remuneration is wholly contingent on a successful outcome, the time Class Counsel spent working on this case could and would have been spent pursuing other potentially fee generating matters. *Id*. Given the risk Class Counsel took in this matter, and the time dedicated to the exclusion of other matters, these factors weigh in favor of finding the requested fee—and modest multiplier—reasonable and appropriate.

Moreover, the rates used by Class Counsel in their fee calculations are consistent with those charged for legal services in contingency fee data breach class actions and those regularly approved

by Courts across the country for attorneys with similar experience, skills, and practice areas. *Id*. ¶¶ 30, 34-36.

### 3. *Time Limitations and Nature and Length of Professional Relationship with Clients*

These factors are of limited relevance here and generally in class action litigation, as the clients did not impose time limitations the factor intended to address interactions with long-term, institutional clients, is of limited relevance in consumer class actions, where Plaintiffs' relationship with counsel is naturally limited in time and scope.

### 4. *The Experience, Reputation and Ability of the Lawyer or Lawyers Performing the Services*

Class Counsel have years of experience representing individuals in complex class actions, including data breach class actions like the instant matter. As set forth in § v(A), *supra*, Class Counsel's depth of experience informed both Plaintiffs' settlement position, and the needs of Plaintiffs and the proposed Settlement Class. Counsel Decl. ¶¶ 18-19 & Exs. 1-3. Class Counsels' experience is an asset in such cases involving novel and complex areas of law. In achieving the present Settlement, Class Counsel were required to utilize their significant experience in data breach litigation—a skill set unique to only a handful of firms currently litigating in this area. *Id.* ¶ 18. Class Counsel took on this case and zealously advocated on behalf of Settlement Class in spite of the risks and challenges posed and devoted a substantial amount of time and money to the prosecution of this case, which ultimately resulted in a Settlement. *Id.* ¶ 28. This is highly beneficial to the Class, weighing in favor of awarding the requested fee.

Class Counsel were also equal to the skill of the lawyers representing Defendant. *See In re Am. Apparel, Inc. S'holder Litig.*, No. 2:10-CV-06352-MMM, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of

16

opposing counsel as a measure of the skill required to litigate the case successfully."). Defendant was represented in this case by a national, highly respected law firm Troutman Pepper Locke with significant resources and substantial experience. This factor, therefore, weighs in favor of the requested fee award.

### 5.  *Nature of the Case, Amount Involved, and Awards in Similar Cases*

Comparing the requested fees to awards in similar cases highlights the reasonableness of this application. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, No. 1:05-cv-0484-DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016) ("The Court finds an award of 33 1/3% of the settlement fund to be in line with other awards in the Eighth Circuit") (collecting cases). Here, Plaintiffs request is in line with awards in class action settlements and particularly in line with the Eight Circuit norm. See*, e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017); *In re Xcel Energy, Inc., Secs. Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases); *West v. PSS World Med., Inc.*, No. 4:13- cv-574, 2014 U.S. Dist. LEXIS 57150 (E.D. Mo. Apr. 24, 2014) (approving attorneys' fees of 33%); *Harris v. Republic Airlines, Inc.*, No. 4-88-1076, 1991 U.S. Dist. LEXIS 16461 (D. Minn. Nov. 12, 1991) (awarding a sum slightly in excess of 30% of common benefit).

Accordingly, as Plaintiffs request for $200,000 in fees and $2,808.11 in reasonable litigation costs is supported by the relevant *Johnson* factors, is reasonable and fair under the circumstances, the Court should grant the request.

### 6.  **Plaintiffs' Service Awards Should be Approved**

17

"Courts routinely recognize and approve incentive awards for class representatives." *Jones*, 266 F.R.D. at 231. Plaintiffs actively assisted Class Counsel in the litigation on behalf of Settlement Class Members. Service awards are recognized where Plaintiffs meaningfully contribute to the litigation by e.g., "monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." Counsel Decl. ¶¶ 11, 51; *Chieftain Royalty Co. v. Enervest Energy Inst'l Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) (citing 5 William B. Rubenstein, *Newberg on Class Actions* § 17:3 (5th ed. 2016)) "Courts have [also] recognized that an award may be appropriate to provide an incentive to act as a named Plaintiff." *Chieftain Royalty*, 888 F.3d at 467 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722-23 (7th Cir. 2001)).

The request for $1,000 service awards compares favorably to incentive awards provided by courts, and is fair, reasonable, and adequate in light of Plaintiffs' contributions on behalf of the Settlement Class. *See Ziegler v. Dale*, No. 18-CV-71-SWS, 2021 WL 8999336, at *8 (D. Wyo. Oct. 22, 2021) (awarding $5,000 service award where the plaintiff "participated in, and assisted class counsel with, initial case investigation and filing of the complaint, and he has remained informed of the litigation's progress.")

As discussed above, Plaintiffs have assisted with the progress of the litigation and stepped forward to serve as the public face of the litigation. Accordingly, the Court should grant the requested service awards of $1,000 each.

C. **The Settlement Class Satisfies Rule 23(a) & (b)(3) and Should Be Certified for Purposes of Settlement.**

In the Preliminary Approval Order, the Court, for settlement purposes only, preliminarily certified the Action as a class action for the Settlement Class, finding the prerequisites of ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority

were satisfied pursuant to Rule 23(a) and (b)(3), and that the Settlement Class should be certified. PAO at 2–4. The Court did so after considering the Rule 23(a) factors of numerosity, commonality, typicality, and adequacy and finding the bases for certification Rule 23(b) present, i.e., that questions of law or fact common to the Settlement Class predominate over any questions affecting only individual members and "Class treatment is superior to other methods of adjudication." *Id*. at 3–4. The Court designated Plaintiffs as Class Representatives pursuant to Rule 23(e)(2)(A), and appointed Jeff Ostrow, Gary M. Klinger, and Leanna A. Loginov as Class Counsel pursuant to Rule 23(g)(1). The Court also appointed Simpluris as the Settlement Administrator and approved the Notice Plan and Claim process. Because nothing has changed regarding class certification, the Court should finally certify the Settlement Class. For efficiency, Plaintiffs incorporate by reference their Settlement Class certification arguments from the Motion for Preliminary Approval. Doc. No. 37-1, at 10–17.

## IV.    CONCLUSION

For all these reasons, Plaintiffs respectfully request the Court enter a Final Approval Order (1) granting Final Approval of the Settlement; (2) affirming certification of the Settlement Class for settlement purposes; (3) confirming Plaintiffs' appointment as Class Representatives; (4) confirming the appointments of Jeff Ostrow, Gary M. Klinger, and Leanna A. Loginov as Class Counsel; (5) confirming the appointment of Simpluris, Inc. as Settlement Administrator; (6) awarding Class Counsel $200,000.00 for attorneys' fees and $2,808.11 for reimbursement of costs; (7) awarding each Class Representative a $1,000.00 Service Award; (8) approving payment of the Settlement Administrative Expenses; (9) overruling timely objections, if any; and (10) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. Plaintiffs attach a proposed Final Approval Order as ***Exhibit C*** hereto.

Dated: April 9, 2026

Respectfully submitted,

By: */s/ J. Barton Goplerud*
J. Barton Goplerud, AT002983
Brian O. Marty, AT0011622
SHINDLER ANDERSON GOPLERUD &
WEESE PC
5015 Grand Ridge Drive
West Des Moines, IA 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
Email: goplerud@sagwlaw.com
　　　marty@sagwlaw.com

Jeff Ostrow (*Pro Hac Vice*)
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel : 954.332.4200
ostrow@kolawyers.com

Leanna A. Loginov (*Pro Hac Vice*)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
lloginov@shamisgentile.com

Gary Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Class Counsel for Plaintiffs and the Settlement Class*

20

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2026, a true and correct copy of the foregoing was filed electronically to the Clerk of Court via the EDMS system which will send notification of such filing to all counsel of record.


/s/ *J. Barton Goplerud*_____