**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| **SARAH FETES, ANTHONY BANGERT, DECLAN LAWSON, NICOLE CHURCH BRIAR NAPIER, and DOUGLAS ARP,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**LEE ENTERPRISES INCORPORATED,**<br><br>Defendant. | Case No. 3:25-cv-00067-SMR-SBJ |

**JOINT DECLARATION OF COUNSEL SUPPORTING**
**MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD**

1.     We, Leanna Loginov, Jeff Ostrow, and Gary Klinger, are counsel for Plaintiffs in the above-captioned case. This declaration supports Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards. We have personal knowledge of the facts in this declaration and could testify to them if called on to do so.

**LITIGATION BACKGROUND AND THE WORK OF CLASS COUNSEL**

2.     This Action arises from a Data Security Incident of Defendant's systems that potentially impacted approximately 39,779 individuals' Private Information. Defendant is a media company that provides local news, information, and advertising in 72 markets and 25 states. Defendant detected the Data Security Incident in February 2025,  and began sending notice letters about the Data Security Incident to individuals whose Private Information was potentially affected in June 2025. The proposed Settlement Class consists of the individuals whose Private Information may have been impacted.

1

3.      As a result of the Data Security Incident, five proposed class actions against Defendant were filed in the United States District Court for the Southern District of Iowa. Plaintiffs moved to consolidate the related actions and on July 11, 2025, the related actions were consolidated into the instant Action, the first-filed *Fetes v. Lee Enterprises, Inc*. Plaintiffs filed the operative consolidated Complaint on August 11, 2025, asserting claims against Defendant for negligence, negligence *per se*, unjust enrichment, invasion of privacy, breach of fiduciary duty, breach of implied contract, and declaratory relief.

4.      Thereafter, considering the risk, expense, and delay of continued litigation, and in an effort to conserve resources for the benefit of the Settlement Class,  the Parties began discussing an early resolution of the Action.

5.      To aid in settlement negotiations, the Parties exchanged informal discovery related to the nature of the Data Security Incident, the size and scope of the putative class, the data elements at issue, Defendant's responsive and remedial measures, and Defendant's financial condition. The materials exchanged in connection with settlement negotiations allowed Plaintiffs to thoroughly evaluate the strengths and weaknesses of the claims and defenses in the Action and the potential for resolution.

6.      The Parties then engaged in arms-length negotiations over the course of several months through experienced counsel, which ultimately resulted in their agreement to resolve the Action through the proposed Settlement.

7.      Thereafter, the Parties worked cooperatively to negotiate and finalize Settlement terms and the Agreement, Notices, and Claim Form accompanying the Motion for Preliminary Approval, and to select and agree on a Settlement Administrator. The Parties agreed upon

Simpluris, Inc. as the Settlement Administrator given its substantial experience in administering complex class action settlements.

8.     The Parties did not negotiate attorneys' fees and costs or Class Representative Service Awards until after all material terms of the Settlement benefitting the Settlement Class were agreed upon. In doing so, Class Counsel and Plaintiffs avoided conflicts with the Settlement Class.

9.     Class Counsel will request one-third of the $600,000.00 non-reversionary, common Settlement Fund for attorneys' fees, plus reasonable litigation expenses. Many courts within the Eighth Circuit have determined an award of one-third of a common Settlement Fund is reasonable, and it is fair and reasonable here. Class Counsel's request for this Fee Award and Costs will be included in the Motion for Final Approval.

10.     Class Counsel will request Service Award Payments of $1,000.00 for each Class Representative. These Service Award Payments are intended to reimburse Class Representatives for their efforts and in recognition of their dedication to the Settlement Class.

11.     Class Representatives adequately represented the Settlement Class by assisting in the investigation of the Action, reviewing the complaints, remaining available for consultation throughout Settlement negotiations, reviewing the Settlement Agreement, and answering Class Counsel's many questions. Class Representatives do not have any conflicts with the Settlement Class.

12.     Class Counsel adequately represented the Settlement Class by utilizing their extensive experience in class action litigation and complex data breach cases to secure an excellent Settlement providing timely, certain, and meaningful relief to the Settlement Class.

13.     The relief obtained is adequate because the costs, risks, and delay of trial and appeal are substantial. While Class Counsel and Plaintiffs strongly believe in the merits of Plaintiffs' case, they also recognize Defendant intended to assert numerous, and potentially dispositive, defenses. The risk of establishing liability, damages, and maintaining the Action as a class action throughout trial are all substantial. Given these risks, and the risks posed by data breach litigation in particular, the Settlement provides relief that is both timely and substantial.

14.     The complexity, expense and likely duration of the litigation are substantial. Indeed, Plaintiffs would need to successfully oppose a motion to dismiss, and then likely need to gain and maintain class certification, prevail on summary judgment, win at trial, and prevail on appeal. Additionally, the amount of data expert analysis and testimony needed to bring this Action to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter.

15.     The relief is also adequate because the proposed method of distributing relief is effective.

16.     There is no agreement required to be identified under Rule 23(e)(3).

17.     The reaction of the Settlement Class to the Settlement is currently unknown. While the Class Representatives have reviewed and approved the Settlement Agreement, other Settlement Class Members have not yet had that opportunity to voice their opinions.

**CLASS COUNSEL'S RECOMMENDATION**

18.     Class Counsel have years of experience representing individuals in complex class actions, including data breach class actions like the instant matter. As such, Class Counsel's depth of experience informed both Plaintiffs' settlement position, and the needs of Plaintiffs and the proposed Settlement Class. While Class Counsel and Plaintiffs believe in the merits of Plaintiffs'

claims, they are also aware that a successful outcome is uncertain, and would be achieved (if at all) only after prolonged, arduous litigation with the attendant risk of drawn-out appeals and the potential for no recovery at all.

19.    Based upon Class Counsel's substantial experience, it is our opinion that the proposed Settlement warrants the Court's Preliminary Approval. After all, this Settlement provides timely and significant monetary relief to Settlement Class Members. And the terms of the Settlement are well within the range of those accepted by courts in similar data breach class action settlements, including the following examples: *See, e.g., Rutledge v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (reimbursement of out-of-pocket expenses and lost time up to $180, credit monitoring, and data security enhancements); *Chacon v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb.) (reimbursement of ordinary expenses up to $300, extraordinary expenses up to $3,000, credit monitoring, and data security enhancements); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981-CJC (DFMx) (C.D. Cal.) (reimbursement of documented losses up to $6,000, choice of credit monitoring or $100 flat cash payment); *Bahnmaier v. Wichita State Univ.*, No. 2:20-cv-02246-JAR-TJJ, (D. Kan.) (reimbursement of lost time up to $60, and out-of-pocket losses up to $300); *Baksh v. IvyRehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y.) (reimbursing up to $75 out-of-pocket expenses and $20 for lost time, capped at $75,000 in the aggregate, credit monitoring, and data security enhancements).

20.    This result is particularly favorable given the risks of protracted litigation. Not only does this Settlement avoid the risks of protracted litigation, but it also provides benefits to the Class Members *today*—as opposed to the mere possibility of future relief.

21.    The Parties tailored the terms of the Settlement to address the specific potential harms (including out-of-pocket expenses) caused by the Data Security Incident, thereby

reimbursing economic losses. Additionally, the Settlement provides valuable relief to the Settlement Class by making one free year of three-bureau credit monitoring services with at least $1,000,000 in fraud protection available to all Claimants. In addition to the Settlement Benefits of Settlement Payments and credit monitoring, Defendant has agreed to implement and maintain enhanced confidential cyber security, data, and privacy measures. Such enhancements include expansion of third-party security monitoring, improvements in identity and access management, improvements in password management systems, enhancements to network segmentation and firewalls, and improvements in policies, processes and procedures. The cost of this prospective will be paid by Defendant separately and in addition to the Settlement Fund, and provides meaningful, forward-looking benefits to all Settlement Class Members, regardless of whether they submit a Claim.

22.     The Settlement benefits unquestionably provide a favorable result to the Settlement Class. As such, the Settlement is well within the range of acceptable outcomes that satisfy the requirements for Preliminary Approval.

23.     Additionally, the Notice Program contemplated by the Settlement provides the best practicable method to reach Settlement Class Members. Moreover, this particular Notice Program is consistent with the notice programs approved by other courts in similar class actions.

24.     The Claims process is structured to ensure all Settlement Class Members have adequate time to review the Settlement terms; compile documents supporting their Claim for Compensation of Ordinary or Extraordinary Losses, if elected; submit Claims; and decide whether to opt-out or object to the Settlement. The Claim Form is in plain language for easy completion.

25.     The Opt-Out Period and Objection Deadline are specifically calculated to provide sufficient time to access and review the Settlement documents, including the motion for Attorneys'

Fees, Costs, and Service Awards, to be filed no later than 14 days before the Opt-Out Deadline and close of the Objection-Period and posted on the Settlement Website.

26.    Individual litigation for all members of the Settlement Class—who have the same claims arising from the same Data Security Incident—would be highly inefficient and unnecessarily burden judicial and party resources.

27.    Thus, Class Counsel ask the Court to grant Preliminary Approval of the Settlement Agreement and enter the proposed Preliminary Approval Order.

**Time and Expenses**

28.    Class Counsel served as the principal lawyers in charge of all aspects of the litigation and worked collaboratively in the case to ensure that Plaintiffs and the Class which they sought to represent were zealously represented, while also ensuring efficiency and reducing duplicative effort. In addition, the fees and expenses incurred in this litigation are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

29.    In prosecuting this case, Class Counsel performed a significant amount of work including, in particular:

a.    investigated the potential claims against Defendant, interviewed potential plaintiffs, and gathered information about the Data Incident and its potential impact on consumers;

b.    conducted a pre-suit factual investigation including interviewing the Plaintiffs and reviewing their documents, background and damages, and continued their investigation during the pendency of this case, by attempting to locate and interview potential witnesses and reviewing public documents, including Defendant's public statements, letters to consumers, and website, developing information from third-parties, and scouring internet websites for information

7

about the Data Incident and Defendant's business operations in general and specifically pertinent to the Data Incident;

c.  self-organized the respective cases, and cooperated in jointly preparing the First Amended Complaint;

d.  drafted and filed Plaintiffs' original complaints and the current, operative, Class Action Complaint;

e.  discussed with Defendant the potential for early resolution, and exchanged confidential information in advance of the settlement discussions, which information provided by Defendant aided Class Counsel in developing an understanding the Data Incident, the breadth of the Data Incident, the size and composition of the Class and the potential damages to Class Members;

f.  prepared the Settlement Agreement and supporting documents, including the Notice, Summary Notice, claim form, proposed preliminary and proposed final approval orders;

g.  prepared and submitted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and supporting, which was ultimately granted when the Court preliminarily approved the Settlement;

h.  when necessary, conferred with one another about the status, strategy, and direction of the case and settlement negotiations; and,

i.  regularly conferred with the Plaintiffs about the status, strategy, and direction of the case and settlement negotiations.

30.    Records kept by Class Counsel of the aforementioned work reflect that attorneys and paralegals worked a combined 194.76 hours, through April 9, 2026, on this litigation, which, multiplied by the current hourly rates amounts to $133,035.80 in lodestar. Class Counsel's current rates are also appropriate in light of prevailing rates for similar legal services provided by lawyers

of reasonably comparable skill, experience, and reputation. Many other courts have found Class Counsel's current rates to be reasonable in a settlement context.

31.     This does not include time Class Counsel will spend on continuing services to the Class, including drafting and filing the final approval motion, attending the final settlement hearing, responding to Class Members' inquiries, supervising the claims administration in the review and processing of claims, and overseeing the distribution of payments and of Identity-Theft Protection services to Class Members.

32.     Separately, the time described above does not include charges for expense items. With respect to the unreimbursed expenses, Class Counsel has spent a total of $2,808.11 for this litigation, including necessary costs associated with pro hac vice fees and other filing fees. These costs were all advanced by Class Counsel, were necessarily incurred in the prosecution of this case, and were also properly documented and prepared using contemporaneous time records.

33.     Plaintiffs' requested fee award represents a 1.5 multiplier of Class Counsel's collective lodestar.  Because there is additional work required to obtain final approval, monitor the Settlement, and assist Class Members, this multiplier will ultimately decrease.

34.     Milberg's hourly rates range from $1,141 for Senior Partners and $258 for paralegals and have been recently approved by courts around the country, including in data breach settlements similar to this one. These include, but are not limited to, *In re Onix Group Data Breach Litigation*, Case No. 23-2288-KSM (ED Pa. 12/13/2024, Doc. 57) (Judge Marston approving Milberg hourly rates); *In re: GE/CBPS Data Breach Litigation*, Case No. 1:20-cv-02903 (KPF) (S.D.N.Y. 3/28/2023, Doc. 123) (Judge Failla approving Milberg hourly rates); *Pagan v. Faneuil, Inc.*, Case No. 3:22-cv-297 (ED VA February 17. 2023, Doc. 53) (Judge Payne approving Milberg hourly

rates); *Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (WD WI, July 22, 2022), Doc. 84) (Milberg fee application approved on a lodestar basis); *James v. Cohnreznick LLP*, Case Number: 1:21-cv-06544-LJL (SD NY September 20, 2022, Doc. 56(approving Milberg fee application submitted on both percentage of benefit and lodestar calculation);*In re Deva Concepts Product Liability Litigation*, Case 1:20-cv-01234-GHW, Order Granting Motion for Attorneys' Fees, Doc. 129 (January 3, 2022); *see also* Doc. 121-1 (filed 10/01/21); *Lamie et al. v. LendingTree, LLC,* Case No. 3:22-cv-00307 (W.D. N.C. February 27, 2024, Doc. 60) (final approval order approving Milberg hourly rates as reasonable as part of a lodestar cross-check, and highlighting "the quality, skill, and experience of counsel" and "the excellent results"); *Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo. Doc. 76 (same); *Purvis, et al v. Aveanna Healthcare, LLC*, Case No. 1:20-cv-02277-LMM (N.D. Ga. October 2022, Doc. 79) (appointed class counsel; final approval granted) (same).

35.    Shamis & Gentile's hourly rates range from $950 for Partners and $250 for paralegals and have been recently approved by courts around the country, including in data breach settlements similar to this one.  These include, but are not limited to: *In re AACOM Data Breach Litigation*, Case No. 8:25-cv-01239-TJS (D. Md.) (appointed Class Counsel, final approval and request attorney's fees of $ 233,333.33 and reasonable expenses of $1,928.99 granted); *Dean, et al. v. New York Blood Center, Inc., et al.* Case No. 62-CV-25-5975 (Ramsey County District Court, Minnesota)(Finding class counsel Shamis & Gentile's rates reasonable and granting attorney's fees of $166,666.67, plus reasonable expenses of $10,668.73).

36.    Kopelowitz Ostrow's hourly rates range from $1,100 for Partners and $250 for paralegals and have been recently approved by courts around the country, including in data breach

settlements similar to this one. These include, but are not limited to: *Peterson v. Vivendi Ticketing US LLC*, Case No. CV 23-7498-MWF (DFMx) (C.D. Cal. Dec. 16, 2024), Doc. No. 52 (KO fee application approved on percentage-of-fund and lodestar bases); *McKenzie v. Walser Automotive Group, LLC*, et al., Case No. 27-cv-24-9692 (Hennepin Ct'y, Mn. Sept. 15, 2025) (KO fee application approved on lodestar basis); *Herman, et al. v. MD Now Medical Centers, Inc.*, Case No. CACE25005305 (Broward Ct'y Fl. Sept. 18, 2025) (KO fee application approved on lodestar basis); *Gina Letizio, et al. v. Akumin Operating Corp.*, Case No. CACE25011999 (Broward Ct'y Fl. Dec. 16, 2025) (KO fee application approved on lodestar basis).

37.    Class Counsel undertook this litigation on a purely contingent basis, with no assurance of recovery of expenses or attorneys' fees. The nature of contingency fees is that they are inherently uncertain and require counsel to assume more risk than in cases where compensation is based on billable hours. Accordingly, the percentage of fee applied to the total recovery obtained for the client reflects the uncertain nature of contingency fee agreements, and the fee percentage is generally one third of the total recovery and can be higher where risk and likely case expenses are expected to be relatively high. The fee percentage is always in addition to case expenses incurred in furtherance of the clients' cases.

38.    The Fee Motion comports with the terms of the Settlement Agreement. The Settlement Agreement reflects Plaintiffs' counsel would apply for and Defendants would not object to a fee request and expense reimbursement of an amount not to exceed Two Hundred Thousand Dollars (or $200,000.00). This provision was negotiated only after all of the other settlement terms had been finalized.

39.    The expenses pertaining to this case are reflected in the books and records of Class Counsel. The total of the expenses for which Plaintiffs' counsel seek reimbursement was

calculated from receipts, expense vouchers, check records and other documents maintained by the respective law firms.

40.    Generally, Class Counsel should be awarded a fair and reasonable attorneys' fee and reimbursed for the expenses they incurred in the investigation, prosecution, negotiation and Settlement of this action.

41.    Class Counsel invested substantial time, effort, and resources into the litigation of this risky and uncertain case with no guarantee or promise of return on their investment. Class Counsel seek reimbursement of their lodestar already incurred and for time to be spent wrapping up the litigation. The pursuit of this litigation was an economic risk for Class Counsel and diverted their resources from other less risky cases. Moreover, Class Counsel also bore the risk that any judgment would become uncollectable for myriad reasons.

42.    This matter has required us, and other attorneys at our law firm, to spend time on this litigation that could have been spent on other matters. At various times during the litigation of this class action, this lawsuit has consumed significant amounts of our time and our firms' time. Such time could otherwise have been spent on other fee-generating work. Because our firms undertook representation of this matter on a contingency-fee basis, we shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

43.    If not devoted to litigating this action, from which any remuneration is wholly contingent on a successful outcome, the time our firms spent working on this case could and would have been spent pursuing other potentially fee generating matters.

44.    Litigation is inherently unpredictable and therefore risky. Here, that risk was very real, due to the rapidly evolving nature of case law pertaining to data breach litigation, and the

state of data privacy law. Therefore, despite our firms' devotion to the case and our confidence in the claims alleged against Defendants, there have been many factors beyond our control that posed significant risks.

45.    An award of the requested fees, costs and expenses is justified under the circumstances of this case, in light of the risk, work performed, and the results achieved is justified. The Settlement makes available an immediate cash payment to Settlement Class Members.

46.    Class Counsel have ample experience prosecuting data privacy and consumer class actions. As a member of Milberg's data privacy team, Mr. Nelson has been appointed by state and federal courts as class counsel in data breach class actions, including: *In re Community Clinic of Maui Data Breach Litigation,* No. 1:24-cv-00431 (D. HI) (appointed co-lead counsel); *In Re: SAG-AFTRA Health Plan Data Security Litigation*, No. 2:24-cv-10503 (C.D. Cal.) (appointed co-lead counsel); *Feathers v. On Q Financial LLC*, 2:24-cv-00811 (D. Ariz.) (appointed co-lead counsel); *Anderson v. Oak View Group, LLC*, No. 2:24- cv-00719 (C.D. Cal.) (appointed co-lead counsel); and *Puller-Soto v. UNITE HERE*, No. 1:24-cv-01565 (S.D.N.Y.) (appointed co-lead counsel). Mr. Nelson has also been appointed to the Plaintiffs' Steering Committee in the recent 60-million-person data breach litigation captioned *In Re: Powerschool Holdings, Inc., and Powerschool Group, LLC Customer Data Security Breach Litigation*, Case No.: 25-md-3149-BEN-MSB. He was also appointed to the Plaintiffs' Steering Committee in *Cheng et al v. Toyota Motor Corporation, et al* a nationwide class action involving defective fuel pumps which resulted in a 330-million-dollar nationwide settlement. No. 1:20-CV-00629 (E.D.N.Y.) (final approval granted December 21, 2022). Mr. Nelson was also appointed to the Executive Committee in *In re Seresto Flea and Tick Collar Marketing, Sales Practices and Product Liability Litigation*, MDL No. 3009, Master Docket Case No. 1:21-cv-04447 (N.D. Ill.).

47.	Ms. Loginov has been appointed by state and federal courts as lead counsel in data breach class actions nationwide, including: *In re NJ Lenders Corp Data Breach Litigation*, Case No. 2:25-cv-16799 (D.N.J. 2025) (Appointed Interim Class Counsel); *In re DRT LLC Data Security Litigation*, Case No. 1:25-cv-00013 (S.D. Iowa 2025) (Appointed Interim Co-Lead Class Counsel); *Gabrielsen v. Duff Capital Investors, LLC*, Case No. 2:25-cv-00104 (S.D. Miss. 2025) (Appointed Interim Class Counsel); *In re Cardiology Associates Data Breach Litigation*, Case No. 02-CV-2025-900139 (Ala. Cir. Ct. 2025) (Appointed Interim Co-Lead Class Counsel); *Karen Desmarais v. Concord Orthopaedics Professional Associations* Case No. 217-2025-CV-00292 (Hillsborough Superior Court, New Hampshire) (Appointed Class Counsel); *In re Fundamental Administrative Services, LLC Data Breach Litigation*, Case No. 1:25-cv-02754 (D. Md. 2025) (Appointed Interim Co-Lead Counsel).

Ms. Loginov has also been appointed to several steering and executive committees in data breach cases, including: *In re Legacy Treatment Services Data Security Incident Litigation*, Case No. 1:25-cv-14968 (D.N.J. 2025) (Appointed to Plaintiffs' Executive Committee); *Dunn v. Complete Payroll Solutions, LLC*, Case No. 1:25-cv-30045 (D. Mass. 2025) (Appointed Plaintiffs' Steering Committee); *In re Radiology Associates of Richmond Data Breach Litigation*, Case No. 3:25-cv-518 (E.D. Va. 2025) (Appointed to Plaintiffs' Executive Committee).

48.	Mr. Ostrow has been appointed by state and federal courts as lead counsel in data breach class actions nationwide, including: *In Re: AT&T Inc. Customer Data Sec. Breach Litig.*, 3:24-cv-00757 (N.D. Tex.); *McNally, et al. v. Infosys McAmish Sys., LLC*, 1:24-cv-00995 (N.D. Ga.); *Owens v. MGM Resorts Int'l*, 2:23-cv-01480-RFB-MDC (D. Nev.),; *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.); *In re Berry, Dunn, McNeil & Parker Data Sec. Incident Litig.* (D. Me.); *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.),;

14

*Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.); *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.); *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah); *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.); and *In re DISA Global Data Breach Litig.*, No. 4:25-cv-00821 (S.D. Tex.).

49.     Based on our years of practice litigating complex class actions, Plaintiffs' requested attorneys' fees, costs and expenses sought here are reasonable.

### Service Awards

50.     Pursuant to the Settlement Agreement, Plaintiffs will each be awarded, subject to Court approval, $1,000.00 for their services as the Class Representatives, for a total of Six Thousand Dollars ($6,000.00).

51.     The Plaintiffs here have been instrumental in assisting Plaintiffs' counsel throughout this proceeding. Their involvement was not merely nominal. Plaintiffs initiated and remained in contact with Plaintiffs' counsel; considered and questioned various pleadings in this case, including the Amended Complaint and settlement papers; monitored and periodically visited with Plaintiffs' counsel; provided background documents and followed the progress of this litigation; and have been actively involved in the prosecution of the case, to ensure that Class members received the best recovery possible given the particular circumstances and risks of the case. Accordingly, we support the Court's approval of service awards to the Plaintiffs for their investment of time and energy in this class action.

*       *       *       *       *

I swear and affirm, under the laws of the State of Florida, that the foregoing is true and accurate.

Executed on April 9, 2026 in Miami, Florida.

*/s/Leanna Loginov*

15

I swear and affirm, under the laws of the State of Illinois, that the foregoing is true and accurate.

Executed on April 9, 2026 in Chicago, Illinois.

*/s/Gary Klinger*

I swear and affirm, under the laws of the State of Florida, that the foregoing is true and accurate.

Executed on April 9, 2026 in Fort Lauderdale, Florida.

*/s/Jeff Ostrow*