IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| SARAH FETES, ANTHONY BANGERT, DECLAN LAWSON, NICOLE CHURCH, DOUGLAS ARP, and BRIAR NAPIER, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | Case No. 3:25-cv-00067-SMR-SBJ

ORDER ON MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, ATTORNEY'S FEES AND EXPENSES AWARD, AND SERVICE AWARD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| LEE ENTERPRISES INCORPORATED, | ) ) | |
| Defendant. | ) | |

Plaintiffs move for final approval of a class action settlement, for attorney's fees and costs, and for service awards. [ECF No. 40]. The parties also jointly move to designate a *cy pres* recipient for any residual funds. [ECF No. 48]. The Court held a final approval hearing on June 30, 2026. [ECF No. 47]. Having reviewed the settlement, the parties' submissions, the class's response, and the record, the Court GRANTS both motions. [ECF No. 40].

## I.     BACKGROUND

This case arises from a data security incident affecting the computer systems of Lee Enterprises, Incorporated. The incident occurred in February 2025 and potentially compromised the private information of approximately 39,779 individuals, including Social Security numbers and medical information. Defendant sent notice letters to affected individuals beginning in June 2025.

Related class actions were filed in this district and consolidated into this action. Plaintiffs filed a consolidated complaint asserting claims for negligence, negligence *per se*, invasion of privacy, unjust enrichment, breach of fiduciary duty, breach of implied contract, and declaratory

1

relief.  [ECF No. 16].  The parties exchanged informal discovery about the incident, the affected class, the compromised data, and Defendant's remedial measures.  Following arm's-length negotiations, they reached the settlement now before the Court.

The Court granted preliminary approval on January 23, 2026.  [ECF No. 38].  It provisionally certified a settlement class, appointed class representatives and class counsel, approved the notice plan, and set a final approval hearing.  Notice has issued.  The deadlines to opt out and object have closed.  The matter is ripe for final approval.

The settlement establishes a $600,000 non-reversionary common fund.  Class members may claim reimbursement for documented ordinary losses up to $1,000, documented extraordinary losses up to $3,000, or an alternate cash payment calculated *pro rata*.  All class members may obtain a year of three-bureau credit monitoring, and all benefit from data security enhancements Defendant will implement separately and at its own expense.  The fund covers notice and administration costs, court-approved attorney's fees and costs, and service awards.

## II.    CERTIFICATION OF THE SETTLEMENT CLASS

The Court provisionally certified the settlement class at preliminary approval, finding numerosity, commonality, typicality, adequacy, predominance, and superiority satisfied under Rule 23(a) and (b)(3).  [ECF No. 38 at 2–5].  Nothing has changed.  The class remains as certified, and the Court confirms certification for settlement purposes.  Because this is a settlement class, the Court need not consider trial manageability.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The Court finally certifies the following settlement class:

> All persons identified as being among those individuals impacted by
> the Data Security Incident, including all who were sent a notice of
> the Data Security Incident.

Excluded from the class are: (1) the judges presiding over this action and members of their immediate families and staff; (2) Defendant and its subsidiaries, parent companies, successors,

predecessors, and any entity in which Defendant has a controlling interest; (3) persons who timely and properly opted out; and (4) the successors or assigns of any excluded person.

The Court confirms Sarah Fetes, Anthony Bangert, Declan Lawson, Nicole Church, Douglas Arp, and Briar Napier as class representatives.  It confirms Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeff Ostrow of Kopelowitz Ostrow P.A., and Leanna A. Loginov of Shamis & Gentile, P.A. as class counsel under Rule 23(g).  It confirms Simpluris, Inc. as settlement administrator.

### III.    NOTICE

Notice satisfied Rule 23(c)(2)(B) and due process.  The administrator mailed direct postcard notice to all 39,757 class members for whom a valid address was available, after running the addresses against the USPS National Change of Address database and removing 22 duplicates. [ECF No. 40-3 ¶¶ 9–10].  It skip-traced returned mail, re-mailed 215 notices, and reached 83.46% of the class after 6,579 notices proved undeliverable.  *Id.* ¶ 11.  That reach exceeds the threshold courts treat as adequate.  The administrator also maintained a settlement website and a toll-free line throughout the notice period.

The notice fairly apprised class members of the settlement.  It described the benefits, explained how to claim, opt out, object, and appear, stated the deadlines and the hearing date, and disclosed the fee and service-award requests.  Due process requires no more.  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (requiring notice reasonably calculated to apprise interested parties and afford an opportunity to object).

Notice under the Class Action Fairness Act ("CAFA") was effected on February 3, 2026. [ECF No. 40-3 ¶ 5].  The 90-day period under 28 U.S.C. § 1715(d) closed without comment or objection from any governmental entity.

## IV.    FINAL APPROVAL

A class settlement requires a finding that it is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2) directs attention to whether the representatives and counsel adequately represented the class, whether the settlement was negotiated at arm's length, whether the relief is adequate, and whether the settlement treats class members equitably.  Courts in this circuit also weigh the merits against the settlement terms, the defendant's financial condition, the complexity and expense of further litigation, and the amount of opposition.  *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015).  Settlements enjoy a strong presumption of fairness.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999).  Each consideration favors approval.

### A.    Adequate Representation and Arm's-Length Negotiation

The class representatives and class counsel adequately represented the class.  The representatives assisted the investigation, reviewed filings, provided documents, and stayed engaged through settlement.  [ECF No. 40-2 ¶¶ 11, 51].  Class counsel are experienced data-breach litigators who investigated the claims and analyzed informal discovery before negotiating terms. *Id.* ¶¶ 18, 29.  The negotiations were arm's-length.  Counsel deferred any discussion of fees and service awards until the substantive terms were set—a sequence that guards against conflict.  *Id*. ¶ 8.  The record reveals no collusion.

### B.    Adequate Relief

The relief is adequate when weighed against the costs, risks, and delay of continued litigation.  Data-breach plaintiffs face real hurdles on standing, causation, and class certification. Success, if it came at all, would follow years of contested litigation and likely appeal.  The settlement delivers certain relief now: cash payments, a year of credit monitoring, and prospective security enhancements that protect every class member regardless of whether they claim.  A sure recovery outweighs the prospect of nothing after protracted litigation.

The method of distributing relief is effective.  Class members submit a plain-language claim form by mail or online.  Documented losses require supporting proof; the alternate cash payment requires none and is calculated *pro rata* from the net fund.  [ECF No. 37-2 ¶¶ 3.3–3.4].

The fund is non-reversionary, so no money returns to Defendant, and a rejected loss claim rolls into the cash pool rather than being denied outright.  *Id*. ¶ 3.10.  Any residual remaining more than 120 days after settlement payments issue—chiefly the value of uncashed checks—passes to a *cy pres* recipient rather than reverting to Defendant.  *Id*. ¶ 3.12.  The parties jointly move to designate the United Way Quad Cities, a 501(c)(3) organization, as that recipient.  [ECF No. 48].  The Court approves the designation.  A *cy pres* distribution is proper only for funds that cannot feasibly be redistributed to the class, and only to a recipient whose mission reasonably approximates the class's interests.  *In re BankAmerica Corp. Sec. Litig*., 775 F.3d 1060, 1064 (8th Cir. 2015).  Both limits are honored here.  The settlement pays claimants *pro rata* before any *cy pres* distribution, so only true residual reaches the recipient.  And the United Way Quad Cities serves the community in which this litigation sits and Defendant is based.

The claims rate does not counsel against approval.  As of April 1, 2026, the administrator had received 3,244 claims, a rate of 8.16%.  [ECF No. 40-3 ¶ 14].  That rate meets or exceeds the response typical of consumer settlements and is, in any event, immaterial to fairness here: because the fund is non-reversionary and distributed *pro rata*, a lower claims rate raises each claimant's recovery rather than stranding funds.  *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (approving a settlement over a low-claims-rate objection and noting that consumer claims rates seldom exceed seven percent).

### C.  Equitable Treatment

The settlement treats class members equitably.  All members may claim the same menu of benefits—documented ordinary or extraordinary losses, the alternate cash payment, and credit

monitoring—and all benefit from the security enhancements. [ECF No. 37-2 ¶¶ 2.1–2.2, 3.3–3.6].

The structure accounts for differing circumstances without arbitrary distinctions.

### D.  Additional Considerations

The remaining circuit factors align.  Plaintiffs' claims, though facially meritorious, face substantial litigation risk.  Continued litigation would be complex and expensive.  Defendant's financial condition is neutral; the record does not place its ability to pay at issue.  And the class's response is overwhelmingly positive.  Out of 39,757 members, three opted out and none objected. [ECF No. 40-3 ¶¶ 21, 23].  That near-unanimous acceptance is strong evidence of fairness.  *See Petrovic*, 200 F.3d at 1148–49.  The settlement is fair, reasonable, and adequate.  The Court grants final approval.

### V.    ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

A court may award reasonable fees and nontaxable costs authorized by the parties' agreement. Fed. R. Civ. P. 23(h).  Courts in this circuit may use the percentage-of-the-fund method or the lodestar method. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244–45 (8th Cir. 1996).

Class counsel request one-third of the fund.  The request is reasonable.  A one-third award is in line with fees approved in this circuit. *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 629 (S.D. Iowa 2016).  The lodestar confirms it.  Counsel reports $133,035.80 in lodestar on 194.76 hours, so a $200,000 award reflects a multiplier of roughly one and one-half. [ECF No. 40-2 ¶ 30]. Multipliers under two are commonly approved here. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017).

The award must honor the terms on which the class was noticed.  The notice and the Settlement Agreement cap Class Counsel's fees and costs at a combined $200,000. [ECF Nos. 40-2 ¶ 38; 37-2 ¶ 9.1].  The motion nonetheless sought $200,000 in fees plus an additional $2,808.11 in costs—$2,808.11 above the noticed ceiling.  The noticed cap controls, and the Court will not

approve fees and costs exceeding the figure on which absent class members relied in deciding whether to object or opt out. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–95 (9th Cir. 2010) (due process requires that class members receive fee information in time to object). The Court therefore awards $200,000 in the aggregate, allocated $197,191.89 in fees and $2,808.11 in costs. This honors the notice and yields an aggregate award of exactly one-third of the fund. The reduction works no material modification of the settlement and triggers no termination right because the Settlement Agreement expressly excludes any court-ordered reduction of the Fee Award and Costs or the Service Awards from the definition of a "material modification" and separately provides that no decision on the amount of fees may ground termination. [ECF No. 37-2 ¶¶ 9.3, 10.2].

The service awards are reasonable. Each representative assisted the investigation, reviewed filings, and remained engaged through settlement. [ECF No. 40-2 ¶¶ 11, 51]. The parties set the amounts only after agreeing on the class terms. [ECF No. 37-2 ¶ 8.4]. The Court awards $1,000 to each of the six representatives, for a total of $6,000. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). The Court approves the settlement administrator's expenses of $81,135. [ECF No. 40-3 ¶ 24].

VI.    DISMISSAL AND RELEASE

The action is dismissed with prejudice and without costs, except as the settlement provides. Upon the Effective Date, each class representative and every settlement class member who did not timely opt out—on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors—releases Defendant and the Released Parties from all Released Claims, and, as to the class representatives only, from any Unknown Claims. [ECF No. 37-2 ¶¶ 4.1, 4.3–4.5]. The released claims reach only those claims arising from or related to the Data Security Incident that were or could have been asserted in the Action. *Id*. ¶ 1.39.

The class representatives and settlement class members who did not opt out are enjoined from prosecuting any Released Claim against any Released Party.  The settlement may be pleaded as a complete defense to any such claim.

## VII.    OTHER PROVISIONS

The Court retains continuing and exclusive jurisdiction over the parties and the settlement class to implement, administer, and enforce the settlement.  Nothing in this order or the settlement is an admission or evidence of any liability or wrongdoing by Defendant.  If the Effective Date does not occur, this order is void, the parties revert to their positions before the settlement, and neither the settlement nor this order may be used for any purpose.  [ECF No. 37-2 ¶ 10.4].

## VIII.    CONCLUSION

Plaintiffs' Unopposed Motion for Final Approval, Attorney's Fees and Expenses, and Service Awards is GRANTED. [ECF No. 40].  The parties' Joint Motion to Designate *cy pres* Recipient is also GRANTED.  [ECF No. 48].  The Court therefore:

1.  Certifies the settlement class for settlement purposes;

2.  Confirms the appointment of the class representatives, class counsel, and the settlement administrator;

3.  Finds that notice satisfied Rule 23(c)(2)(B), due process, and CAFA;

4.  Finally approves the settlement as fair, reasonable, and adequate;

5.  Awards class counsel $200,000 inclusive of fees and costs, allocated $197,191.89 in fees and $2,808.11 in costs;

6.  Awards each class representative a $1,000 service award, totaling $6,000;

7.  Approves the settlement administrator's expenses of $81,135;

8.  Designates the United Way Quad Cities as the *cy pres* recipient of any residual funds under Section 3.12 of the Settlement Agreement;

9.  Dismisses the action with prejudice; and

10. Retains jurisdiction over the settlement's administration and enforcement.

The Clerk shall enter final judgment.

IT IS SO ORDERED.

Dated this 31st day of July, 2026.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT